## WATERS–PIERCE OIL COMPANY v. STATE OF TEXAS (NO. 1).

### ERROR TO THE COURT OF CIVIL APPEALS FOR THE THIRD SUPREME JUDICIAL DISTRICT OF THE STATE OF TEXAS.

No. 359. Argued November 2, 3, 1908.—Decided January 18, 1909.

The jurisdiction of this court, under § 709 Rev. Stat., to review the proceedings of state courts is limited to specific instances of denials of Federal rights specially set up in and denied by the state court.

This court does not review, but accepts as conclusive the findings of facts made by the state court.

Although the state court may incorrectly charge as to certain provisions of a statute if the jury finds that defendant has violated those provisions and also other provisions not involving any Federal question, and only one penalty is assessed, the judgment rests on a non-Federal ground sufficient to sustain it, and this court has not jurisdiction to review it under § 709 Rev. Stat.

Although an agreement to violate the anti-trust law of a State may be made outside of the State, if the parties thereto or their agents execute it, or attempt so to do, within the State, they are under the jurisdiction of the State and their conviction for such acts is not without due process of law.

States having power to prevent unlawful combinations in restraint of trade may provide the procedure for enforcing the same, subject only to the qualification that such procedure must not deny or conflict with fundamental or constitutional rights.

Even though it would be giving a penal statute a retroactive effect to make it apply to an unlawful agreement executed prior to the passage of the act by defendant's predecessor in interest, defendant is subject to conviction for violating the act after its enactment by making itself a party to and carrying out its illegal provisions.

Where defendant has had a fair trial and the question of liability has been submitted to a jury and the judgment reviewed and sustained by an appellate court, this court will not hold that there has been a deprivation of due process of law because the state statute permitted, and the court charged, that conviction could be had not only for acts accomplishing, but also for those tending or reasonably calculated to bring about, the things prohibited.

The anti-trust laws of Texas involved in this case are not unconstitutional as depriving any one of due process of law because vague and indefinite as prohibiting acts which "tend" or are "reasonably calculated" to restrain trade and prevent competition.

The fixing of punishment for crime and penalties for unlawful acts is within the police power of the State, and this court cannot interfere with state legislation in fixing fines, or judicial action in imposing them, unless so grossly excessive as to amount to deprivation of property without due process of law.

Where a state anti-trust law fixed penalties at $5,000 a day, and, after verdict of guilty for over 300 days, a defendant corporation was fined over $1,600,000, this court will not hold that the fine is so excessive as to amount to deprivation of property without due process of law where it appears that the business was extensive and profitable during the period of violation, and that the corporation has over $40,000,000 of assets and has declared dividends amounting to several hundred per cent.

106 S. W. Rep. 918, affirmed.

THE facts are stated in the opinion.

*Mr. Moorfield Storey, Mr. E. B. Perkins* and *Mr. Henry Samuel Priest,* with whom *Mr. J. L. Thorndike* was on the brief, for plaintiff in error:

By the proceedings in the Texas courts defendant has been

subjected to the penalties of the act of 1899 by reason of an agreement made by another company, the old Waters-Pierce Company, with the Standard Oil Company, confining the business of those two companies to different parts of the United States. This agreement was made in 1878, many years before the act was passed. The defendant cannot be so subjected to penalties without giving a retroactive effect to the act and depriving the defendant of its property without due process of law.

The defendant did not by acquiring the business and property of the old Waters-Pierce Company succeed to any of the liabilities of that company. *Armour* v. *Bement's Sons*, 123 Fed. Rep. 56.

The state courts by imposing on the defendant a liability on account of an agreement made by the old company have undertaken to deprive the defendant of its property without due process of law. *Woodward* v. *Central Vermont Ry. Co.*, 180 Massachusetts, 599; *Davidson* v. *New Orleans*, 96 U. S. 102.

But if the defendant is to be regarded as the old company in a new form, then the question is to be treated in the same manner as if the old company were sued for penalties for having entered into the agreement for a division of territory in 1878 and remaining a party to it on and after June 1, 1900. *Waters-Pierce Oil Co.* v. *Texas*, 177 U. S. 36, 39. And in 1878 there was no law in Texas forbidding such an agreement. *Mogul Steamship Co.* v. *McGregor*, A. C. 1892, 39.

Although the words of the act refer to the future, yet as the state courts gave it retroactive effect the defendant has thereby been deprived of its constitutional right. *General Oil Co.* v. *Crain*, 209 U. S. 211, 228.

The agreement was not only made before the act of 1899 was passed, but it was made outside of the State of Texas, and it did not provide that either company should do anything in Texas. By imposing penalties on the defendant by reason of such an agreement the State is punishing an act done out of its jurisdiction and so depriving the defendant of its property with-

out due process of law. *State* v. *Lancashire Ins. Co.*, 66 Arkansas, 466; *O'Neil* v. *Vermont*, 144 U. S. 332, 341; *United States* v. *Thayer*, 209 U. S. 39, 44; *In re Palliser*, 136 U. S. 257, 266.

The only provision of the agreement that affected Texas was that the Standard Oil Company should not do business in that State, which it could not do without carrying its oil into that State for the purpose and thereby engaging in interstate commerce. The State had no authority to regulate such commerce by imposing penalties for entering into contracts relating to it. *General Oil Co.* v. *Crain*, 209 U. S. 228, 229; *Caldwell* v. *North Carolina*, 187 U. S. 622; *Leisy* v. *Hardin*, 135 U. S. 100, 119; *Rearick* v. *Pennsylvania*, 203 U. S. 507.

The defendant has also been subjected to the penalties of the act of 1899 for the doings of the Standard Oil Company in acquiring shares in the defendant company, in which the defendant itself had no part. Such an imposition of penalties upon the defendant for the acts of somebody else is a taking of its property without due process of law. *Case* v. *Bank*, 100 U. S. 446; *Oliver* v. *Bank*, 1 Ch. 615, 619, 629; Lindley on Companies (6th ed.), 81; *Davidson* v. *New Orleans*, 96 U. S. 102; *Hobson* v. *Middleton*, 9 B. & C. 303.

This acquisition of the shares also took place outside of Texas and under the laws of Missouri, and was a matter to which the State of Texas could not constitutionally extend its jurisdiction. *State* v. *Lancashire Ins. Co.*, 66 Arkansas, 466.

By the course that has been pursued, the jury have been enabled to convict the defendant and impose penalties upon it on account of a combination formed outside of the State of Texas which has not been found to have regulated any prices in Texas or even to have had any effect upon them. As this is a matter in which the State of Texas has no authority, the defendant is by this means deprived of its property without due process of law.

Any combination effected by the acquisition of shares by the Standard Oil Company was effected when that company first acquired the shares in the old Waters-Pierce Company, long

before the act of 1899 was passed. The imposition of penalties on this ground therefore gives the act the effect of an *ex post facto* law.

In like manner the defendant has been subjected to the penalties of the act of 1903 for what the Standard Oil Company did in acquiring the shares. This has been done on the ground that defendant thereby entered into a combination, and that thereby the two companies were placed under the same management or control, and that the Standard Oil Company had acquired the shares with the purpose on the part of its own officers of lessening competition in Texas. The constitutional rights of the defendant have been violated in the three ways previously mentioned, by imposing penalties on the defendant for the acts of somebody else, for acts done outside of Texas, and for acts done before the statute. *General Oil Co.* v. *Crain*, 209 U. S. 211, 228; *Kring* v. *Missouri*, 107 U. S. 228.

Both the acts of 1899 and 1903 are too indefinite and uncertain in their terms to make it an offense to do what the defendant has been found by the jury to have done, and that the imposition of penalties for doing that deprives the defendant of its property without due process of law. *Montana* v. *Rice*, 204 U. S. 291, 299; *Sullivan* v. *Texas*, 207 U. S. 422; *Tozer* v. *United States*, 52 Fed. Rep. 917; *Ex parte Jackson*, 45 Arkansas, 158; *Louisville & Nashville R. R. Co.* v. *Commonwealth*, 99 Kentucky, 132; *S. C.*, 35 S. W. Rep. 129; *Louisville & Nashville R. R. Co.* v. *R. R. Commission*, 19 Fed. Rep. 679, 691; *Railroad Commission Cases*, 116 U. S. 336; *United States* v. *Brewer*, 139 U. S. 278.

The penalties that have been imposed upon the defendant are also so excessive as to constitute a deprivation of its property without due process of law. While the Eighth Amendment against excessive bail and fines may not apply to the different States, *Pervear* v. *Commonwealth*, 5 Wall. 475; *O'Neil* v. *Vermont*, 144 U. S. 332, the prohibition is one of fundamental rights of life, liberty and property, the observance of which by the

States, as well as by the general government, is essential to due process of law, and is enforced by the Fourteenth Amendment. *O'Neil* v. *Vermont*, 144 U. S. 339–341, 370.   For instances of penalties held to be excessive, see *State* v. *Galveston, Harrisburg, San Antonio Ry. Co.*, 100 Texas, 153, 175; *S. C.*, 97 S. W. Rep. 71; *State* v. *Whitaker*, 48 La. Ann. 527.   See also *Porter* v. *Dawson Bridge Co.*, 157 Pa. St. 374–379.

The arbitrary admission of evidence that could have no possible connection with the issues in the case and could only confuse and excite the prejudice of the jury; directing the jury, therefore, to consider such evidence as tending to prove some of the issues in favor of the State, and directing them to bring in a verdict for the State if they found facts of which there was no evidence whatever, amounted to a denial of a trial according to law, and the judgment deprived the defendant of its property without due process of law.

To bring the case under *In re Converse*, 137 U. S. 631; *Backus* v. *Fort Street Union Depot Co.*, 169 U. S. 566; *Smiley* v. *Kansas*, 196 U. S. 453, there must be, not only the form, but the substance, of a trial according to the regular course of procedure, and not a reckless disregard of defendant's rights.   *Backus* v. *Fort Street Union Depot Co.*, 169 U. S. 565; *Fayerweather* v. *Ritch*, 195 U. S. 297; *Patterson* v. *Colorado*, 205 U. S. 461.

The trial must be according to the modes of proceeding applicable to such a case, secured by laws operating on all alike, and not subjecting the individual to the arbitrary exercise of the powers of government unrestrained by the established principles of private right and distributive justice.   In determining what is due process of law regard must be had to substance, not to form.   *Chicago, Burlington & Quincy R. R. Co.* v. *Chicago*, 166 U. S. 234.

The prohibitions of the Fourteenth Amendment extend to all acts of the State, whether done through its legislative, executive or judicial authorities.   *Scott* v. *McNeal*, 154 U. S. 45; *Waterworks Co.* v. *Owensboro*, 200 U. S. 45; *Londoner* v. *Denver*, 210 U. S. 386.

It cannot reasonably be said that any of the doings or agree-ments of the old company had any such fair relation to the question whether the defendant had violated the Texas anti-trust laws, as to make it evidence upon that question. *People* v. *Cannon,* 139 N. Y. 43, 45; *Commonwealth* v. *Anselvitch,* 186 Massachusetts, 378, 379.

The defendant did not succeed to the liabilities or obligations of the old company, *Armour* v. *Bement's Sons,* 123 Fed. Rep. 56, and the legislature could not have imposed those liabilities or obligations upon the defendant. *Woodward* v. *Central Vermont Ry. Co.,* 180 Massachusetts, 599.

The permit was a contract with the State for valuable con-sideration under which the defendant was entitled to do busi-ness in Texas for ten years, and the revocation of the permit without convicting the defendant of misconduct by due process of law was, like the imposition of the penalties, a deprivation of its property without due process of law. *American Smelting Co.* v. *Colorado,* 204 U. S. 103; *Waters-Pierce Oil Co.* v. *Texas,* 177 U. S. 47.

The order appointing the receiver, being dependent on the judgment, must fall with the judgment.

Upon the reversal of the judgment, the defendant is entitled to be put in the same position as if there had never been any such judgment. 2 Wms. Saund. 101 *gg;* 2 Tidd's Practice (9th ed., 1828), 1186, 1187; Tidd's Forms (1828), 540, 556–558.

After the judgment for penalties had been superseded by the appeal and bond, the judge had no authority to complete the appointment of a receiver, and the order completing such ap-pointment deprived the defendant of its property without due process of law. A *supersedeas* stops all sort of proceedings. *Smith* v. *Nicholson,* 2 Stra. 1186; *Sampson* v. *Brown,* 2 East, 439.

So, by the laws of Texas, as declared by its Supreme Court, the judge had no authority to go on and complete the appoint-ment of the receiver after the original judgment had been superseded. In doing so he acted arbitrarily and without au-

thority of law, and, if the appointment is allowed to be put in force, the defendant will be deprived of its property without due process of law.

The judge and officers of the court in completing the appointment of the receiver acted as representatives of the State, and their acts were those of the State. *Scott* v. *McNeal,* 154 U. S. 45; *Waterworks Co.* v. *Owensboro,* 200 U. S. 45; *Londoner* v. *Denver,* 210 U. S. 386.

*Mr. R. V. Davidson,* Attorney General of the State of Texas, *Mr. R. L. Batts* and *Mr. G. W. Allen,* with whom *Mr. Jewel P. Lightfoot, Mr. John W. Brady* and *Mr. T. W. Gregory* were on the brief, for defendant in error:

No substantial Federal question requiring the exercise of the jurisdiction of this court is involved in this case. *Arkansas Southern R. R. Co.* v. *German Bank,* 207 U. S. 275; *Leathe* v. *Thomas,* 207 U. S. 98; *Stickney* v. *Kelly,* 209 U. S. 422; *Thomas* v. *Iowa,* 209 U. S. 263; *Bachtel* v. *Wilson,* 204 U. S. 36.

Neither the act of 1899 nor the act of 1903 is an *ex post facto* law, nor is either retroactive, nor was either given a retroactive effect in this case. *Glue Co.* v. *Glue Co.,* 187 U. S. 611; *United States* v. *Trans-Missouri Traffic Association,* 166 U. S. 290; *United States* v. *Joint Traffic Ass'n,* 171 U. S. 505; *Pearsall* v. *Great Northern R. R. Co.,* 161 U. S. 646; *Louisville & Nashville Ry. Co.* v. *Kentucky,* 161 U. S. 677; *State* v. *Insurance Co.,* 94 U. S. 535; *Mugler* v. *Kansas,* 123 U. S. 668; *Waters-Pierce Oil Co.* v. *State,* 44 S. W. Rep. 941; *State* v. *Missouri, Kansas & Texas Ry. Co.,* 91 S. W. Rep. 214; *Ford* v. *Milk Shippers' Assn.,* 27 L. R. A. 298.

Neither the act of 1899 nor the act of 1903, as construed by the highest state courts of Texas, denies to plaintiff in error the equal protection of the law. *National Cotton Oil Co.* v. *Texas,* 197 U. S. 115; *Smiley* v. *Kansas,* 196 U. S. 447; *Mugler* v. *Kansas,* 123 U. S. 665; *Gundling* v. *Chicago,* 177 U. S. 188; *Soon Hing* v. *Crowley,* 113 U. S. 708; *Nutting* v. *Massachusetts,* 183 U. S. 553; *Wurts* v. *Hoagland,* 114 U. S. 615; *Duncan* v.

*Missouri,* 152 U. S. 382; *Eldridge* v. *Trezevant,* 160 U. S. 469; *Lowe* v. *Kansas,* 163 U. S. 88; *Missouri Railway Co.* v. *Mackey,* 127 U. S. 209; *Pacific Express Co.* v. *Seibert,* 142 U. S. 352; *Powell* v. *Pennsylvania,* 127 U. S. 687; *American Sugar Co.* v. *Louisiana,* 179 U. S. 95; *Booth* v. *Illinois,* 184 U. S. 429; *Capital City Drug Co.* v. *Ohio,* 183 U. S. 246.

Neither the act of 1899 nor the act of 1903 deprived plaintiff in error of its property without due process of law.

There was a petition, filed in a court of competent jurisdiction, setting out in detail the things done by plaintiff in error, and laws it had violated. An answer was filed setting up the defenses in detail, and there was a trial before the court and a jury, lasting ten days, and a great mass of testimony introduced by both sides, and the jury found the plaintiff in error guilty, and the court entered a judgment in accordance therewith. The case was thereupon carried to the Court of Civil Appeals in the regular way, and after a full hearing and careful consideration by that court, it affirmed the judgment of the trial court. *Simon* v. *Craft,* 182 U. S. 427; *Remington Paper Co.* v. *Watson,* 173 U. S. 443; *New Orleans Waterworks* v. *Louisiana,* 185 U. S. 336; *Railway Co.* v. *Missouri,* 156 U. S. 478; *Iowa Central Ry. Co.* v. *Iowa,* 160 U. S. 389; *Murray* v. *Hoboken Land Co.,* 18 How. 272; *New Orleans Debenture Redemption Co.* v. *Louisiana,* 180 U. S. 320; *Rothschild* v. *Knight,* 184 U. S. 334; *Consolidated Rendering Company* v. *Vermont,* 207 U. S. 541; *Cosmopolitan Club* v. *Virginia,* 208 U. S. 384; *Caldwell* v. *Texas,* 137 U. S. 697; *Miller* v. *Texas,* 153 U. S. 539; *Minder* v. *Georgia,* 183 U. S. 559.

If there was any error in the charge of the trial court upon the matter of stock-ownership the error is immaterial, and any Federal question that might have been predicated of it has been eliminated from the case by the action of the Court of Civil Appeals in basing a judgment of affirmance upon other grounds. *Missouri, Kansas & Texas Ry. Co.* v. *Ferris,* 179 U. S. 602; *Hammond* v. *Johnson,* 142 U. S. 73; *Harrison* v. *Morton,* 171 U. S. 38; *Klinger* v. *Missouri,* 13 Wall. 257; *Ken-*

*nard* v. *Louisiana,* 92 U. S. 480; *Lent* v. *Tillson,* 140 U. S. 316; *Chicago, Burlington & Quincy R. R. Co.* v. *Chicago,* 166 U. S. 226; *Glue Co.* v. *Glue Co.,* 187 U. S. 611; *United States* v. *Trans-Missouri Traffic Assn.,* 166 U. S. 290; *State* v. *Missouri, Kansas & Texas Ry. Co.,* 91 S. W. Rep. 214; *Baldwin* v. *Kansas,* 129 U. S. 52.

The combination effected between the Standard Oil Company and the Waters-Pierce Oil Company by the acquisition of the stock of the latter by the former for the purposes for which the acquisition was made and with the effect intended violated the laws of Texas and the infliction of penalties therefor would not have given the laws either an extraterritorial effect, or a retroactive effect, or otherwise have violated the Constitution of the United States.

Neither the act of 1899 nor that of 1903 is vague, uncertain or indefinite. *Swift & Co.* v. *United States,* 196 U. S. 375; *United States* v. *Freight Ass'n,* 166 U. S. 325; *Northern Securities Case,* 197 U. S. 244; *National Cotton Oil Co.* v. *Texas,* 197 U. S. 115; *Smiley* v. *Kansas,* 196 U. S. 474; *State of Texas* v. *Laredo Ice Co.,* 73 S. W. Rep. 952; *Missouri, Kansas & Texas Ry. Co.* v. *State,* 91 S. W. Rep. 214; *San Antonio Gas Co.* v. *State,* 54 S. W. Rep. 289; *People* v. *Sheldon,* 139 N. Y. 251; *Drake* v. *Seibold,* 81 Hun, 178; *People* v. *North River Ref. Co.,* 121 N. Y. 582.

The jurisdiction of the legislature of Texas to pass laws prohibiting the making of agreements or the forming of combinations in restraint of trade in Texas, or the carrying out in Texas of such agreements or combinations, is absolute and complete. *Waters-Pierce Oil Co.* v. *Texas,* 177 U. S. 28; *National Cotton Oil Co.* v. *Texas,* 197 U. S. 115; *Smiley* v. *Kansas,* 196 U. S. 447; *Addyston Pipe Co.* v. *United States,* 175 U. S. 211; *Mugler* v. *Kansas,* 123 U. S. 665; *Slaughter House Cases,* 16 Wall. 63; *Barbier* v. *Connolly,* 113 U. S. 31; *Carroll* v. *Greenwich Insurance Co.,* 199 U. S. 410; *United States* v. *E. C. Knight Co.,* 156 U. S. 1; *Waters-Pierce Oil Co.* v. *State,* 44 S. W. Rep. 936; *Anheuser-Busch Brewing Assn.* v. *Houck,* 27 S. W. Rep. 692; *State* v. *Laredo Ice Co.,* 73 S. W. Rep. 952; *Coal Co.* v. *Lawson,*

34 S. W. Rep. 919; *State* v. *Missouri, Kansas & Texas Ry. Co.*, 91 S. W. Rep. 214; *People* v. *Sugar Trust*, 121 N. Y. 582; *State* v. *Standard Oil Co.*, 49 Ohio St. 137; *Harding* v. *American Glucose Co.*, 182 Illinois, 551; *Arnot* v. *Pittson Coal Co.*, 68 N. Y. 558.

Having complete jurisdiction to pass laws prohibiting the making of agreements or the forming of combinations in restraint of trade in Texas, or the carrying out in Texas of such agreements or combinations, the legislature has the absolute right to prescribe the punishment for a violation of such laws, and the laws under consideration are open to no constitutional objections on account of the penalties. *National Cotton Oil Co.* v. *Texas*, 197 U. S. 115; *Ripley* v. *Texas*, 193 U. S. 504; *Ohio* v. *Lloyd*, 194 U. S. 445; *Marvin* v. *Trout*, 199 U. S. 212; *McCray* v. *United States*, 195 U. S. 27; *Devine* v. *Los Angeles*, 202 U. S. 302; *Railway Co.* v. *Hume*, 115 U. S. 512; *Tel. Co.* v. *Indiana*, 165 U. S. 304; *Coffey* v. *Harlan County*, 204 U. S. 659; *Railway Co.* v. *Seegers*, 207 U. S. 73; *N. W. L. I. Co.* v. *Riggs*, 203 U. S. 251; *O'Neil* v. *Vermont*, 144 U. S. 323.

MR. JUSTICE DAY delivered the opinion of the court.

This case was begun in the state Circuit Court of Travis County, Texas, to forfeit the permit of the plaintiff in error, the Waters-Pierce Oil Company, a corporation of the State of Missouri, to conduct business in the State of Texas, and to assess penalties against it for violation of the anti-trust laws of that State. The prosecution was under two laws of the State, one of 1899 and one of March 31, 1903. The proceeding was brought by the Attorney General of Texas and the county attorney of Travis County, to recover penalties, under the act of 1899, from the thirty-first day of May, 1900, until the thirty-first day of March, 1903, at the rate of $5,000 per day, and under the act of 1903, from the thirty-first of March, 1903, till the twenty-ninth of April, 1907, at the rate of $50 per day, and to cancel the permit of the defendant to do business, other than interstate, in Texas.

The jury returned a verdict against the defendant, and as-

sessed penalties, under the act of 1899, from May 31, 1900, to March 3, 1903, 1,033 days. Such penalties were assessed at the rate of $1,500 a day during that period, being the total sum of $1,549,500. The jury also found against the defendant under the act of 1903, and assessed the penalties for each day between April 1, 1903, and April 29, 1907, 1,480 days at the rate of $50 per day, making a total of $74,000. The jury further found that the permit of the defendant to do business in the State of Texas should be cancelled. Thereupon the court rendered a judgment for the State of Texas for the sum of the penalties assessed, $1,623,500, and ordered a cancellation of the defendant's permit to do business in the State except as to its interstate commerce business. This judgment was affirmed upon appeal to the Court of Civil Appeals of Texas (106 S. W. Rep. 918), and upon application to the Supreme Court of Texas that court refused to grant a writ of error, and the case was brought here.

The case was submitted upon oral arguments and elaborate briefs and a voluminous record. It was argued, in many aspects, as though this were a proceeding in error to review the weight of the evidence adduced in the state courts, to reëxamine the rulings of the court upon the admissibility of testimony, and to determine the effect of the statute of limitations in the State.

The jurisdiction of this court to review the proceedings of the state courts, as we have had frequent occasion to declare, is not that of a general reviewing court in error, but is limited to the specific instances of denials of Federal rights, whether those pertaining to the constitutionality of Federal or state statutes, or to certain rights, immunities and privileges of Federal origin, specially set up in the state court and denied by the rulings and judgment of that court. Sec. 709, Rev. Stat. U. S. Nor does this court sit to review the findings of facts made in the state court, but accepts the findings of the court of the State upon matters of fact as conclusive, and is confined to a review of questions of Federal law within the jurisdiction conferred upon this court. *Quimby* v. *Boyd*, 128 U. S. 488; *Egan* v. *Hart*, 165 U. S. 188; *Dower* v. *Richards*, 151 U. S. 658; *Thayer* v. *Spratt*, 189

U. S. 346. We shall not, therefore, undertake to follow counsel in the consideration of all the questions argued, but shall limit our review to questions of a Federal nature which we deem to be properly made in this record and essential to the decision of the case.

Epitomizing the Texas anti-trust statutes for the purposes of his charge the learned judge who presided in the District Court, speaking first of the act of 1899, stated them as follows:

"For the purposes of this charge you are instructed that this act made it unlawful for any corporation transacting or conducting any kind of business in this State to enter into, or become a party to, any agreement or understanding with any other corporation or individual to fix or regulate the price in Texas of any article of manufacture or merchandise or to control or limit in Texas the trade in any article of manufacture or merchandise.

"You are further instructed that said statute also made it unlawful for any corporation transacting or conducting any kind of business in this State to bring about or permit any union or combination of its capital, property, trade or acts with the capital, property, trade or acts of any other person or corporation, whereby the price in Texas of any article of manufacture or merchandise would be fixed or sought to be fixed, regulated or sought to be regulated; or whereby the price in Texas of any article of manufacture or merchandise would be reasonably calculated to be fixed or regulated, or whereby the trade in such article of manufacture or merchandise in Texas would be sought to be controlled or limited, or would be reasonably calculated to be controlled or limited.

"The statute known as the anti-trust law of 1903 became effective on March 31st, 1903, and has since continued in force. For the purposes of this charge you are instructed that this statute defines a trust to be a combination of capital, skill or acts, by two or more persons, firms, corporations or associations of persons, or either two or more of them, for either, any or all of the following purposes, viz:

"1. To create or which may tend to create or carry out restrictions in trade or commerce in Texas, or to create or carry out restrictions in the free pursuit in Texas of any business authorized or permitted by the laws of this State.

"2. To fix, maintain or increase the price of merchandise in Texas.

"3. To prevent or lessen competition in Texas in the sale of merchandise.

"4. To abstain from engaging in business or in the sale of merchandise in Texas, or any portion thereof.

"Said statute of 1903 further defines a monopoly to be a combination or consolidation of two or more corporations when effected in any of the following methods, viz:

"1. When the direction of the affairs of two or more corporations is in any manner brought under the same management or control for the purpose of producing, or where such common management or control tends to create a trust, as above defined.

"2. When any corporation acquires the shares or certificates of stock, franchise or other rights, or the physical properties or any part thereof of any other corporation for the purpose of preventing or lessening, or where the effect of such acquisition tends to affect or lessen competition, whether such acquisition is accomplished directly or through the instrumentality of trustees or otherwise.

"3. Oil, all other products of petroleum, and goods, wares or merchandise of any character which the defendant or its agents, may have purchased or acquired in any manner outside of the State of Texas and caused to be transported to its agents or others within the State, are the subjects of interstate commerce when they enter this State, and so remain until such commodities are removed from the original tanks, vessels or other packages in which they are imported into the State and become mixed with the common mass of property of similar character in this State. The anti-trust laws of Texas have no reference to agreements or pools or arrangements of any character concerning subjects of interstate commerce, and no agreement,

pool or other arrangement, if any, which the defendant may have entered into with reference to the sale of any subject of interstate commerce can be considered by you as violating any anti-trust law of Texas. But neither oil purchased by the defendant from the Corsicana Refinery or elsewhere in Texas, nor other merchandise purchased by defendant at points in Texas, nor such oil or other merchandise purchased by defendant at points outside of the State and transported into the State and removed from the original packages or vessels in which it was brought into the State and mingled with other property of similar character in the State, is the subject of interstate commerce, but on the contrary is the subject of local commerce, and any agreement or pool or arrangement entered into by defendant with reference to such property or the sale thereof, if any such sale there were, would be unlawful, if in violation of the anti-trust laws of this State."

The penalties denounced by the act of 1899 were not less than $200 nor more than $5,000 for each day the defendant might be found to have violated the law; under the act of 1903 the penalty was fixed at $50 for each day, and a forfeiture of the right to do business within the State of Texas was declared.

The complaint in the case is voluminous, and its averments contain the history of the so-called conspiracy between the Waters-Pierce Oil Company and a number of persons composing the Standard Oil Company, beginning in January, 1870, for the purpose of monopolizing and controlling the business of refining and transporting and selling petroleum and similar products throughout the United States and in the State of Texas. It charges that the Waters-Pierce Oil Company, incorporated in 1878, and the predecessor of the defendant company, was a party to that conspiracy, and for the purpose of carrying out the same had entered into contracts with corporations and individuals engaged in the business of selling petroleum and similar products within the State and suppressed competition therein. It charges that the Waters-Pierce Oil Company had entered into an agreement with the Standard Oil Company of New Jer-

sey for the purpose of monopolizing the trade in petroleum and for the purpose of carrying out certain contracts and conspiracies, entered into for the purposes aforesaid, and permitted the Standard Oil Company to acquire a majority of the shares of stock of the Waters-Pierce Company.

The original Waters-Pierce Oil Company, it states, had been dissolved, and the new company, the present defendant, organized on May 29, 1900, had assumed all the contracts and agreements of its predecessor, and it was averred that the dissolving of the old Waters-Pierce Company and the forming of the new company, the defendant in this case, was in further pursuance of the conspiracy for the purpose of continuing the monopoly and control which had been acquired by the old company; and for the purpose of rendering ineffective the judgments of the state court and of this court (*Waters-Pierce Oil Co.* v. *Texas,* 177 U. S. 28), wherein the right of the Waters-Pierce Company to do business in Texas was forfeited.

It was further averred that the new corporation was of the same name as the old one, with the same amount of stock, which was distributed to the holders of stock in the new corporation in the same proportion among the shareholders as it was in the old corporation. It is charged that a major part of the capital stock, although in fact owned by the Standard Oil Company of New Jersey, stood for a time in the name of H. C. Pierce, but was in fact owned by the Standard Oil Company. That the conduct of the business in the new corporation was not changed, and that it was controlled by the Standard Oil Company of New Jersey in the same manner as the old company had been; that the old contract, whereby there was a division of territory and the limitation of the operations of the Waters-Pierce Oil Company to the State of Texas and some other territory, was maintained and enforced. That other concerns had been acquired in the carrying out of the scheme charged; that said companies had been put out of business or were used in controlling and monopolizing the trade and business aforesaid; that the defendant, the new corporation, was a party to these arrange-

ments, participated in them, and was engaged in carrying them out.

The things charged were alleged to have the effect to control the defendant and a large number of other companies by the same corporation and persons, with the acquiescence and consent of the defendant; that all competition in Texas between companies was destroyed; that certain sections and parts of the United States were assigned to the various companies; that the defendant was permitted to do business in Texas, and that with its knowledge and consent, upon its instance and demands, all other companies had been excluded from doing business in the State of Texas; that by the agreement the defendant was obliged to secure all the oil sold by certain named refiners at prices determined by the Standard Oil Company and those interested in it, with the effect of monopolizing and controlling the business in oil and the production of petroleum in Texas by fixing the prices of such products in that State.

The plaintiff summarizes the unlawful results accomplished as follows:

"(1) The plaintiff in error is dominated and controlled by and its business dictated by the Standard Oil Company of New Jersey.

"(2) A large number of individuals and corporations doing business in the sale of petroleum products are excluded from doing business in the State, and competition is lessened.

"(3) The price of oil had been maintained at an exorbitant figure, being from ten to twenty-five per cent higher than that of oil sold in the territory not claimed by plaintiff in error.

"(4) Competition had been suppressed and business destroyed in the State by unconscionable and unfair means.

"(5) A substantially complete monopoly in petroleum products had been established, the plaintiff in error having sold, during the period of ten years past, at least ninety-five per cent of all petroleum products sold."

The defendant answered and filed a large number of special pleas and exceptions, taking issue upon the charges made in the

petition, and alleging the unconstitutionality of the acts of 1899 and 1903, and alleging that if the petition of the State of Texas be granted it would be denied the equal protection of the laws, be subjected to *ex post facto* laws, deprived of its property without due process of law, and have the obligations of its contracts impaired, contrary to the provisions of the Constitution of the United States.

At the trial at the May term of the District Court of Travis County a verdict was rendered in favor of the State, and penalties were assessed, and the judgment rendered as herein before stated. In the Court of Civil Appeals of the State of Texas that court found the facts to be as found by the verdict in the trial court, and in concluding its opinion upon the question of fact said:

"In appellant's motion for a new trial in the court below, and in its presentation of the case here, the verdict of the jury has been challenged, the contention being that the testimony fails to show that appellant has violated any of the anti-trust laws of this State. The evidence is very voluminous, and it is not necessary that it be set out or epitomized in this opinion. It is sufficient, we think, to show that from the date of its permit to do business in this State, May 31, 1900, appellant has been a party to an agreement or understanding with the Standard Oil Company of New Jersey, one object of which was to create a monopoly and control the price of petroleum oil and prevent competition in its sale in a large and specified territory, including the State of Texas; and that, to a large extent, such object has been accomplished. In so far as that agreement related to this State, appellant, acting by its agents, performed it within the State; and such performance within the limits of the State constitutes violations of Texas laws and renders appellant amenable to such laws, although the agreement between it and the Standard Oil Company may not have been made in this State. To a large extent the case rests upon circumstantial evidence; but we cannot say that the jury were not warranted in the conclusions drawn from it. Hence we hold that the verdict is sup-

ported by testimony, and no error was committed in overruling the motion for a new trial."

The court left the case to the jury upon a charge which permitted them to find whether the defendant company, acting through its duly authorized agents, had entered into or had become a party to an agreement or understanding with the Standard Oil Company of New Jersey on June 1, 1900, to fix or regulate the price of oil in Texas, and whether the company remained or continued to be a party to such agreement, and carried out the same in Texas on dates subsequent to June 1, 1900, and prior to March 31, 1903, and whether the oil, in reference to which such agreement was made and carried out was the subject of local as distinguished from interstate commerce.

And the court further charged that if within the time above stated the defendant had brought about or permitted any combination or union of its capital with that of the Standard Oil Company of New Jersey whereby the price of such oil in Texas was found to be controlled or limited, fixed or regulated, or whereby such price would be reasonably calculated to be fixed or regulated, or whereby the trade in such oil in Texas was sought to be controlled or limited, they might return a verdict for the State.

And the court charged that if they should find that the defendant, through its duly authorized agents, had entered into a combination of its capital with the capital of the Standard Oil Company of New Jersey for the purpose of creating in Texas, or which tended to create in Texas, or carry out in Texas, restrictions in the free pursuit of selling oil, or having the effect of increasing the price of such oil in Texas, or to prevent or lessen competition in selling the same in said State; and that the defendant remained or was a party to and acted under such combination, if such there was on March 31, 1903, and thereafter prior to April 29, 1907, they might return a verdict of guilty.

The jury was further instructed that if they found from the evidence that the direction of the affairs of the Standard Oil Company of New Jersey and those of the defendant company

were under the same management or control after March 31, 1900, and prior to April 29, 1907, and that they were placed under such common management or control by their respectively authorized officers, and if such management or control created or tended to create, or to carry out restrictions in the sale of oil in Texas, as above stated, or to fix, maintain or increase the prices of such oil in said State, or to prevent or lessen competition in the sale of such oil, they might return a verdict for the State. The jury found each of the issues submitted against the defendant. The Court of Civil Appeals affirmed this finding of fact and we must accept the same as established for the purposes of this proceeding in error.

Numerous exceptions were taken to the charge at the trial and are the subjects of assignments of error in the state court and in this court. We are concerned with such as relate to the Federal questions involved in this proceeding.

In the eleventh paragraph of the charge the court instructed the jury as follows:

"XI. If you find from a preponderance of the evidence that the Standard Oil Company of New Jersey had on March 31, 1903, or on any date subsequent thereto and prior to April 29th, 1907, acquired a majority of the capital stock of the defendant corporation and thereby effected a combination of said two corporations, and if you further find from preponderance of the evidence that said stock was acquired and combination effected, if any, with the purpose and intention on the part of the managing officers and directors of said Standard Oil Company of New Jersey of preventing or lessening the competition in the sale in Texas of the character and kind of oil above mentioned, or that the effect of said combination, if such there were, tended to affect or lessen the competition in the sale in Texas of said oil, you will return a verdict for the State, and say by your verdict, we the jury find for the State on the issues submitted for our consideration in paragraph eleven of the court's charge. In this connection you are instructed that if the defendant entered into a monopoly of the character mentioned in this paragraph

of the charge, each day between March 30, 1903, and April 29th, 1907, that it remained a party to such monopoly, if there were any such days, constituted a separate violation of the anti-trust laws of Texas."

The judges of the Court of Civil Appeals differed in their views as to the correctness of this charge, the learned justice who wrote the opinion holding the view that it was calculated to mislead the jury to the belief that they might convict upon this issue regardless of whether the defendant had any knowledge of, participated in or aided the Standard Oil Company in acquiring the stock of the defendant for the purposes stated.

But the court agreed that if wrong this part of the charge afforded no ground for reversal, because the jury found that the appellant had violated other provisions of the act, and assessed but one penalty for each day's violation, and therefore the judgment would have been the same, and the error, if any, was harmless.

In thus deciding the Court of Civil Appeals did not determine a Federal question, nor necessarily decide one adversely to the plaintiff in error, controlling in character, if it appears upon this record that the verdict and judgment can stand upon other grounds free from objection, so far as Federal rights are concerned.

Much of the argument for plaintiff in error is predicated upon the contention that the acquiring of the stock of the Waters-Pierce Company by the Standard Oil Company and the making of the agreement charged were not shown to have been acts done in Texas. It is contended that such acquiring of stock, and agreement, if any, were acts beyond the jurisdiction of the State. But an inspection of the record discloses that the court charged that no agreement made by the defendant outside of the State of Texas could be made the basis of forfeiting its permit to do business in the State, unless such agreement was executed, or attempted to be executed, in the State by the duly authorized agents of the defendant. And in the findings which we have above quoted as to the evidence the state court has

found that the defendant has been since May 31, 1900, a party to an agreement with the Standard Oil Company of New Jersey to create a monopoly and to control prices and prevent competition in Texas, and that to a large extent the object has been accomplished. These findings of facts are conclusive upon us, and show that the conviction was had, for acts and transactions committed and carried out within the State of Texas.

The argument to the effect that the rulings of the court as to the admission of testimony, and upon questions of general law deprived the defendant of its property and rights without due process of law requires us to notice the limitations upon the authority of this court when dealing with legislative acts and proceedings to enforce the same in the state courts. That state legislatures have the right to deal with the subject-matter and to prevent unlawful combinations to prevent competition and in restraint of trade, and to prohibit and punish monopolies, is not open to question. *National Cotton Oil Co.* v. *Texas*, 197 U. S. 115; *Smiley* v. *Kansas*, 196 U. S. 447. Having the power to pass laws of this character, of course the State may provide for proceedings to enforce the same. The State, keeping within constitutional limitations, may provide its own method of procedure and determine the methods and means by which such laws may be made effectual. "The limit of the full control which the State has in a proceeding of its courts, both in civil and criminal cases, is subject only to the qualifications that such procedure must not work a denial of fundamental rights or conflict with specific and applicable provisions of the Federal Constitution." *West* v. *Louisiana*, 194 U. S. 258, 263; and see *Davis* v. *Texas*, 139 U. S. 651; *Brown* v. *New Jersey*, 175 U. S. 172, 175; *Allen* v. *Georgia*, 166 U. S. 138, 140; *In re Converse*, 137 U. S. 624, 632, and *Twining* v. *New Jersey*, 211 U. S. 78, decided at this term of court, where the subject is fully discussed, and previous cases in this court cited.

It is contended that the acts in this case were given a retroactive effect in violation of the Federal Constitution. Art. I, § 10. This argument is predicated largely upon the contention

that the conviction in this case was because of the old agreement of the former Waters-Pierce Oil Company, made long before the passage of the present statute, at a time when it was legal, and before the creation of the defendant company. But in view of the facts found in the state court, to which we have already referred, there was ground for conviction, not because of the making of the old agreement for the division of the territory and the suppression of competition while the old company was in existence, but because the new company was found to have carried out the old agreement and made itself a party thereto, and by continuing the old arrangement after the passage of the law, had brought itself within its terms. Of a similar contention this court said in *Trans-Missouri Traffic Association Case*, 166 U. S. 290:

"It is said that to grant the injunction prayed for in this case is to give the statute a retroactive effect. That the contract at the time it was entered into was not prohibited or declared illegal by the statute, as it had not then been passed; and to now enjoin the doing of an act which was legal at the time it was done would be improper. We give to the law no retroactive effect. The agreement in question is a continuing one. The parties to it adopt certain machinery, and agree to certain methods for the purpose of establishing and maintaining in the future reasonable rates for transportation. Assuming such action to have been legal at the time the agreement was first entered into, the continuation of the agreement, after it had been declared to be illegal, becomes a violation of the act. The statute prohibits the continuing or entering into such an agreement for the future, and if the agreement be continued it then becomes a violation of the act."

It is further insisted that the acts in question are so vague, indefinite and uncertain as to deprive them of their constitutionality, in that they punish by forfeiture of the right to do business, and the imposition of penalties, under provisions of an act which do not advise a citizen or corporation, prosecuted under them, of the nature and character of the acts constituting

a violation of the law. These objections are found in the words of the act of 1899, denouncing contracts and arrangements "reasonably calculated" to fix and regulate the price of commodities, etc. And in the act of 1903 acts are prohibited which "tend" to accomplish the prohibited results. It is insisted that these laws are so indefinite that no one can tell what acts are embraced within their provisions. In support of this contention it is argued that laws of this nature ought to be so explicit that all persons subject to their penalties may know what they can do, and what it is their duty to avoid. And reference is made to decisions which have held that a criminal statute should be so definite as to enable those included in its terms to know in advance whether the act is criminal or not. Among others, *Tozer* v. *United States*, 52 Fed. Rep. 917, is cited, in which the opinion was by Mr. Justice Brewer, then judge of the Circuit Court, in which it was held that the criminality of an act cannot depend upon whether a jury may think it reasonable or unreasonable. To the same effect is *Railway Co.* v. *Dey,* 35 Fed. Rep. 866, also decided by Judge Brewer at circuit. And also the case of *Louisville & Nashville Railway* v. *Commonwealth*, 99 Kentucky, 132, is relied upon, in which a railroad was indicted for charging more than a just and reasonable rate, in which it was held that the law was unconstitutional, for under such an act it rests with the jury to say whether a rate is reasonable, and makes guilt depend, not upon standards fixed by law, but upon what a jury might think as to the reasonableness of the rate in controversy. But the Texas statutes in question do not give the broad power to a court or jury to determine the criminal character of the act in accordance with their belief as to whether it is reasonable or unreasonable, as do the statutes condemned in the cases cited.

Take the act of 1903, which denounces acts which "tend" to bring about the prohibited results. It is not uncommon in criminal law to punish not only a completed act, but also acts which attempt to bring about the prohibited result. In *United States* v. *Knight,* 156 U. S. 1, this court said: "Again, all the au-

thorities agree that in order to vitiate a contract or combination
it is not essential that its result be a complete monopoly.   It is
sufficient if it really tends to that end, and to deprive the public
of the advantages which flow from a free competition."   This
language was quoted with approval in the *Addyston Pipe Co.
Case*, 175 U. S. 237.   And in the *Northern Securities Case*, 193
U. S. 197, while the Sherman Act directly condemned con-
spiracies and combinations in restraint of trade or monopoliz-
ing or attempting to monopolize the same, this court said
(page 332):

"That to vitiate a combination, such as the act of Congress
condemns it need not be shown that the combination in fact
results, or will result, in a total suppression of trade, or in a
complete monopoly, but it is only essential to show that by its
necessary operation it tends to restrain interstate or inter-
national trade or commerce, or tends to create a monopoly in
such trade or commerce, and to deprive the public of the ad-
vantages that flow from free competition."

As to the phrase, "reasonably calculated," what does it in-
clude less than acts which, when fairly considered, tend to ac-
complish the prohibited thing, or which make it highly probable
that the given result will be accomplished?   Again, speaking of
the Sherman Act, this court said in *Swift & Co.* v. *United States*,
196 U. S. 375:

"The statute gives this proceeding against combinations in
restraint of commerce among the States and against attempts
to monopolize the same.   Intent is almost essential to such a
combination and is essential to such an attempt.   Where acts
are not sufficient in themselves to produce a result which the
law seeks to prevent, for instance, the monopoly, but require
further acts in addition to the mere forces of nature to bring
that result to pass, an intent to bring it to pass is necessary in
order to produce a dangerous probability that it will happen.
*Commonwealth* v. *Peaslee*, 177 Massachusetts, 267, 272.   But
when that intent and the consequent dangerous probability
exists, this statute, like many others, and like the common law

in some cases, directs itself against that dangerous probability as well as against the completed result."

It is true that the decisions quoted are in civil cases involving contracts and arrangements held invalid when attacked in proceedings in equity, and did not involve penalties such as were imposed in the case now under consideration.

And it is to be remembered that we are dealing with an act of the legislature, sustained in courts of the State, with reference to its validity in view of the prohibitions of the Federal Constitution against deprivation by state action of liberty or property without due process of law. In this case the defendant has had a trial in a court of justice duly established under the laws of the State, the question of its liability has been submitted to a jury. The judgment has been reviewed in an appellate court, and the correctness of the findings of fact and rulings of law in the lower court affirmed. We are not prepared to say that there was a deprivation of due process of law because the statute permitted, and the court charged that there might be a conviction not only for acts which accomplished the prohibited result, but also for those which tend or are reasonably calculated to bring about the things forbidden.

Again, it is contended that the fines imposed are so excessive as to constitute a taking of the defendant's property without due process of law. It is not contended in this connection that the prohibition of the Eighth Amendment to the Federal Constitution against excessive fines operates to control the legislation of the States. The fixing of punishment for crime or penalties for unlawful acts against its laws is within the police power of the State. We can only interfere with such legislation and judicial action of the States enforcing it if the fines imposed are so grossly excessive as to amount to a deprivation of property without due process of law. *Coffey* v. *Harlan County,* 204 U. S. 659.

The business carried on by the defendant corporation in Texas was very extensive and highly profitable, as the record discloses. The property of the defendant amounted to more

than forty millions of dollars, as testified by its president.  Its
dividends had been as high as seven hundred per cent per
annum.  It was the theory of the State, sustained by the ver-
dict and judgment, that the former course of business was con-
tinued, notwithstanding the judgment of ouster in the former
case.  Within the bounds of the statute the penalties were left
to the discretion of the jury trying the case.  While the penalties
imposed are large they are within the terms of the statute.
Under the act of 1899 the jury imposed a penalty at the rate
of $1,500 a day; under the act of 1903 at the rate of $50 per day.
Assuming for this purpose that the defendant was guilty of a
violation of the laws over a period of years, and in transacting
business upon so large a scale, as shown in this case, we are not
prepared to say, after confirmation of the verdict and judgment
in courts of the State, that there was want of due process of law
in the penalties assessed.

Remembering, as we have had frequent occasion to say, that
our province in this case is limited to an examination of objec-
tions arising under the Federal Constitution, we are unable to
find in this record any ground for reversing the judgment of the
state court.

*Affirmed.*