### UNITED STATES v. L. COHEN GROCER CO

(District Court, E. D. Missouri, E. D. April 8, 1920.)

No. 7283.

Criminal law ⊛13—Statute making it felony to make unreasonable charge in handling necessaries held too indefinite.

    Lever Act Aug. 10, 1917, § 4, as amended by Act Oct. 22, 1919, § 2, making it felony to make unjust or unnecessary charge in handling or dealing in necessaries, though within the war power of Congress, does not define the offense with sufficient certainty, and is void under Const. Amend. 6, entitling the accused to be informed of the nature and cause of accusation.

L. Cohen Grocer Company was indicted for violating the Lever Food Control Act, as amended in 1919, and he demurs to the indictment. Demurrer sustained.

Vance J. Higgs, Asst. Atty. Gen., for the United States.
Chester H. Krum and Louis B. Sher, both of St. Louis, Mo., for defendant.

FARIS, District Judge. The defendant, a corporation under the laws of the state of Missouri, stands indicted in this court in two counts under the amendment of October 22, 1919, of the Act of August 10, 1917. To this indictment, and to both of the counts thereof, defendant demurs, for that both the indictment, which follows the language of the amendment, supra, and the amendment itself, are

insufficient to inform it of the nature and cause of the accusation against it, and, therefore, that both such indictment and the amendment itself are violative of the Sixth Amendment to the Constitution of the United States.

The language of the statute which attempts to create the crime charged against defendant, so far as that language is pertinent to the specific charge against this defendant, reads thus:

"That it is hereby made unlawful for any person willfully * * * to make any unjust or unreasonable rate or charge in handling or dealing in * * * necessaries. * * * Any person violating any of the provisions of this section upon conviction thereof shall be fined not exceeding five thousand dollars and be imprisoned for not more than two years or both." Section 2, c. 80, 41 Stat. 298. Amendment of Oct. 22, 1919, to the Lever Act.

Following the language of the above statute, the indictment charges that defendant "did willfully and feloniously make an unjust and unreasonable rate and charge in handling and dealing in a certain necessary, to wit, sugar," and thereupon the indictment proceeds to aver the facts of the alleged sale of sugar, in that it sets forth the date of the purchase, the name of the purchaser to whom said sugar was sold by defendant, the amount of sugar sold, and the price charged such purchaser therefor, and concludes by averring:

"That said purchase price so demanded, exacted, and collected for the said granulated sugar, by the said L. Cohen Grocer Company from the said B. Hebigman, was and constituted an unjust and unreasonable rate and charge, as it, the said L. Cohen Grocer Company, then and there well knew."

Shortly before this, in a trial in this court upon a similar indictment against this defendant, at the close of the case, and upon a demurrer ore tenus, bottomed upon the alleged insufficiency of the evidence to convict, I took occasion in an oral charge to say to the jury this:

"The act under which this prosecution is being had was approved on the 22d day of October, 1919, more than 11 months after the signing of the Armistice. It is, of course, fundamental, gentlemen, that the constitutional validity of this act depends wholly upon whether, at the time it was passed and approved, a state of war existed between the United States of America and the Imperial German government. Clearly, in a time of peace, a statute like this could not stand under the Constitution of the United States for a single minute.

"The federal Constitution is not a limitation upon the powers of Congress, but it is a grant of powers to Congress, and beyond the limits if that grant neither Congress nor any other co-ordinate branch of the government had a right to go. Congress has no power to do anything, unless power to act, either expressly or impliedly, is conferred by the terms of the organic law itself.

"So, in times of peace, the power to pass a statute like this 'is to be determined by the question whether the statute falls within the domain of interstate commerce, or within the domain of internal revenue. It must be within the domain of one or the other, or Congress has no power to invade the state's rights and pass it. Very clearly, this statute is not a manifestation of the power of legislation on matters of internal revenue. Just as clearly, in my opinion, or almost as clearly, at least, it is not a matter within the domain of interstate commerce. This is so because this act deals with the commodities that are affected by it after interstate commerce has wholly ceased to deal with these commodities; after, in other words, interstate commerce has acted and the commodity has come to rest in the state—in this case, in the state of Missouri.

"But, lsince the Supreme Court of the United States in the liquor case has seemingly ruled that a legal state of war, or a legal fiction of war, exists and will continue to exist until the ratification of the treaty of peace with the German republic, and until the proclamation of that fact by the President, although the Imperial German government, with which the war was declared, has ceased to be, I am, therefore, bound by this ruling. Consequently, whatever mental reservations I may hold personally, I take it that so far as that particular phase of the Constitution is concerned that the act in question is valid.

"But a most serious question is met, after the constitutionality of the statute is settled, upon the point of its invasion of states' rights, the point that I have just been talking about. That question is whether the act is not too vague, indefinite, and uncertain to be enforced by the courts, and whether by reason of such vagueness, indefiniteness, and uncertainty it does not, in effect, delegate the legislative power which is vested in Congress alone to the courts and to the juries of this country, and also whether this act by its existing terms fixes any definite or certain rule by which human conduct can be uniformly governed. In other words, the question arises—a serious question arises: Does it inform the accused of the nature and cause of the accusation against him, as the Sixth Amendment to the Constitution of the United States specifically and certainly requires. I cannot be brought to think so, gentlemen.

"Briefly: This statute makes it a felony for any person—which, I take it, includes a corporation as well—willfully to make any unjust or unreasonable charge in dealing in any necessary. It nowhere defines what is unjust or what shall be deemed unreasonable. It leaves it to the jury to find what particular thing it is that the law has made a felony of. One jury might very well say that a profit or charge of one cent a pound on sugar, above cost and carriage, is unjust and unreasonable, and so a felonious act; while another jury might say that a charge of 25 cents was not unjust and unreasonable. No criminal statute, gentlemen, ought to be so vague and uncertain as that the citizen cannot at any given moment know whether he is a felon or a patriot.

"In the presence of the existing rapacity and greed of the profiteer, I confess it has been difficult for me to approach this question in a judicial frame of mind. It is to me a matter of most sincere regret that I find it my duty to say, so far as the application of this law to the facts presented in this identical case is concerned, that it is invalid, for the reason I have stated. It is regrettable that a law which was intended to be as beneficent as this law is intended to be, and which was intended and designed to remedy a most outrageous and crying evil, should be found to fall short by reason of constitutional difficulties of the end sought to be attained. There never was a time when a curb of human greed and rapacity was so urgently demanded as it is demanded now, and I repeat that the abhorrence I feel of the selfish hoggishness of the profiteer is such that I can scarcely deal with the question with the amount of judicial aplomb with which I ought to deal with it.

"But, in my opinion, gentlemen, these considerations do not warrant ruthless overriding of the rights of the citizen to have stated in a criminal statute the certain and definite rights which hedge him about as a citizen, and the certain and definite definition, by which he, or his counsel, can ascertain whether or not he is guilty of a felony.

"Congress alone has power to define crimes against the United States. This power cannot be delegated either to the courts or to the juries of this country. * * *

"Therefore, because the law is vague, indefinite, and uncertain, and because it fixes no immutable standard of guilt, but leaves such standard to the variant views of the different courts and juries which may be called on to enforce it, and because it does not inform defendant of the nature and cause of the accusation against it, I think it is constitutionally invalid, and that the demurrer offered by the defendant ought to be sustained."

To these views thus orally expressed I am constrained to adhere, notwithstanding the fact that my attention has been called to certain

cases which, it is urged, give color to the contention that statutes equally as vague, uncertain, and indefinite as that here involved, have nevertheless been upheld by the Supreme Court of the United States as constitutionally valid. These cases are Standard Oil Co. v. United States, 221 U. S. 106, 31 Sup. Ct. 502, 55 L. Ed. 619, 34 L. R. A. (N. S.) 834, Ann. Cas. 1912D, 734; Nash v. U. S., 229 U. S. 373, 33 Sup. Ct. 780, 57 L. Ed. 1232; and Waters-Pierce Oil Co. v. Texas, 212 U. S. 86, 29 Sup. Ct. 220, 53 L. Ed. 417.

The case of Standard Oil Co. v. United States, supra, was a civil proceeding by injunction and for dissolution into its constituent elements for monopolization and restraint of trade, and it was not a criminal proceeding, such as is this at bar. The statutes upheld in the Standard Oil Case upon an attack analogous to this (or so far analogous as a civil case may be to a criminal one) were sections 1 and 2 of the so-called Sherman Anti-Trust Act. Sections 1 and 2, Act of July 2, 1890, c. 647, 26 Stat. 209 (Comp. St. §§ .8820, 8821). These sections denounced and declared unlawful all monopolies and combinations and conspiracies in restraint of trade. Aiding the view taken in the above case by the Supreme Court of the United States, reliance to a large extent was had upon the ancient common-law definitions and crimes of engrossing and monopolizing. Since the above case was not a criminal one, but a civil action, no occasion arose therein for any reference to, or consideration by either court or counsel of, the provisions of the Sixth Amendment to the federal Constitution, and none such was made.

Neither was the case of Waters-Pierce Oil Co. v. Texas, supra, a criminal case, but a civil case in the nature of quo warranto. The trial thereof in the Texas state courts was had under certain statutes of that state, which provided as punishment for the violation thereof ouster and the assessment of certain penalties. Not the Sixth Amendment, but that phase of the Fourteenth Amendment touching due process of law, was alone involved. Waters-Pierce Oil Co. v. Texas, supra, 212 U. S. loc. cit. 111, 29 Sup. Ct. 220, 53 L. Ed. 417. While the attack involved the alleged vagueness and indefiniteness of the Texas statutes, these statutes clearly defined a monopoly. Waters-Pierce Oil Co. v. Texas, supra, 212 U. S. loc. cit. 99, 29 Sup. Ct. 220, 53 L. Ed. 417. For the rest, what is said touching the Standard Oil Case, supra, applies also to the Waters-Pierce Case.

The case of Nash v. United States, supra, was, however, a criminal case under sections 1 and 2, supra, of the Sherman Anti-Trust Act. The indictment in the Nash Case was in two counts, one of which charged a conspiracy is restraint of trade, and the other a conspiracy to monopolize. It may or may not be a suggestive feature that there was originally also a third count which charged Nash with monopolization. This count was held to be bad on demurrer below and thereafter fell out of the case.

In the course of the opinion in the Nash Case, it was pointed out that no overt act—nothing, indeed, beyond the bare conspiracy itself —need be either charged or proven; that the Sherman Anti-Trust Act punishes the conspiracies at which it is leveled on the common-law

footing, and therefore does not make the doing of any act other than the act of conspiracy itself a condition of liability. Thus the Supreme Court justified the statutory crimes and conspiracies to monopolize, and conspiracies in restraint of trade, which are denounced by the Sherman Act, by a relegation for their constituent elements back to the common-law definitions of the crimes of engrossing, monopolies, and contracts in restraint of trade. 3 Coke, Inst. 181, c. 85; 1 Hawkins, P. C. c. 29; 5 and 6 Edw. VI, c. 14; Standard Oil Co. v. United States, 221 U. S. loc. cit. 51, 31 Sup. Ct. 502, 55 L. Ed. 619, 34 L. R. A. (N. S.) 834, Ann. Cas. 1912D, 734. Just here the query may logically arise as to where at common law is there any crime defined or denounced as "making an unjust or unreasonable charge in dealing in any necessary?"

After the Nash Case was ruled, the Supreme Court of the United States again had occasion to refer to it, and distinguish it, in a case arising under the Constitution and laws of the state of Kentucky. International Harvester Co. v. Kentucky, 234 U. S. 216, 34 Sup. Ct. 853, 58 L. Ed. 1284. Plaintiff in error in the above case was convicted and fined in the courts of the state of Kentucky under certain statutes passed, pursuant to provisions of the Kentucky Constitution, which permitted the Legislature to enact such laws as might be necessary to prevent all trusts "from combining to depreciate below its real value any article, or to enhance the cost of any article above its real value." The statutes passed by the Legislature of Kentucky made it lawful to enter into any combination for the purpose of controlling prices, "unless for the purpose or with the effect of fixing a price that was greater or less than the real value of the article." The Supreme Court of the United States held that neither the Constitution of Kentucky, nor the statutes above referred to, and passed pursuant to the Constitution, offered any standard of conduct that it is possible to know in advance and comply with, and that such provisions, as a consequence, were invalid. International Harvester Co. v. Kentucky, 234 U. S. 223, 34 Sup. Ct. 853, 58 L. Ed. 1284.

Distinguishing the Nash Case from what was said in the International Harvester Case, the Supreme Court said:

"We regard this decision as consistent with Nash v. United States, 229 U. S. 373, 377 [33 Sup. Ct. 780, 57 L. Ed. 1232], in which it was held that a criminal law is not unconstitutional merely because it throws upon men the risk of rightly estimating a matter of degree—what is an undue restraint of trade. That deals with the actual, not with an imaginary, condition other than the facts. It goes no further than to recognize that, as with negligence, between the two extremes of the obviously illegal and the plainly lawful there is a gradual approach, and that the complexity of life makes it impossible to draw a line in advance without an artificial simplification that would be unjust. The conditions are as permanent as anything human, and a great body of precedents on the civil side coupled with familiar practice make it comparatively easy for common sense to keep to what is safe. But, if business is to go on, men must unite to do it, and must sell their wares. To compel them to guess, on peril of indictment, what the community would have given for them if the continually changing conditions were other than they are, to an uncertain extent, to divine prophetically what the reaction of only partially determinate facts would be upon the imaginations and desires of purchasers, is

to exact gifts that mankind does not possess." 234 U. S. 223, 34 Sup. Ct. 855, 58 L. Ed. 1284.

While no reference was made by the Supreme Court in the above excerpt to the fact that common-law crimes (which form the very foundation stones of the offenses denounced in the Sherman Anti-Trust Act) were being dealt with in the Nash Case, it is yet clearly obvious that the distinguishing features, as between the two classes of cases, bring this case into that class represented by the Kentucky Statutes, rather than the common-law class represented by the Nash Case. Indeed, upon principle, I am unable to distinguish the instant case from the Kentucky case. No man would engage in business, and no self-respecting man would remain in business, if his fortune, good name, or liberty is to be determined solely by the heated and prejudiced views of what is unjust and unreasonable, which may be entertained by a jury personally embarrassed and harassed, it may be, by the inordinate rise in prices of all commodities. Such a law may be fit for the trial of the guilty; but laws ought to be fit both to try the guilty and the innocent. A law which is fit only to try those who are guilty necessarily begs the question of guilt, and is therefore no better than lynch law.

The definitions, boundaries, and limits of a criminal statute ought, at least, to be so clear that no man in his right mind can be in doubt when he is violating and when he is not violating such statute. There ought not to be necessary any chopping of logic or intricate reasoning from cause to effect in order to decide the question of criminality.

If this law is to stand, then no longer would there seem need of defining crimes by separate statutes. All that will be necessary will be to pass a single sweeping statute, declaring that any person who shall commit any unjust or unreasonable act, or a wrongful or criminal act, shall be deemed guilty of a felony, and leave it to the jury to determine what is unjust, or unreasonable, wrongful, or criminal.

Neither is justification for the indefiniteness and uncertainty which inhere in the statute under discussion to be found in any alleged necessity to mitigate a present and crying evil, which all right-thinking men must deprecate and abhor; for it would seem that it might simply have been declared that a sale of any necessary for a stated percentage increase in price beyond cost and carriage should be a punishable crime. At least, such a law would not be objectionable on the ground here urged. That it would have been arbitrary may be conceded. But the statute here is just as arbitrary, and to its arbitrariness is added an indefiniteness, vagueness, and uncertainty which is dangerous, beyond excusing, to the property and liberty of innocent men.

For these reasons, and for others, which I might add, if leisure allowed, I think the demurrer to the indictment ought to be sustained.