Brewer, Circuit Justice.
Plaintiff in error was indicted in the district court for an alleged violation of the interstate commerce act. There were five counts in the indictment. The court sustained a demurrer to the fourth, and the defendant was found not guilty under the first and fifth, but guilty under the second and third, counts. The judgment of conviction rendered thereon was brought to this court for review by writ of error.
The facts in the case are these: Tozer was agent of the Missomi Pacific Railway Company at Hannibal, Mo. That company operated a line of road extending from Hannibal to Hepler, Kan. At Hannibal it connected with the road of the Chicago, Burlington & Quincy Railroad Company.' The two companies, by agreement, established a joint tariff. By that joint tariff sugar was shipped from Chicago to Hepler at 51 cents a hundred pounds. The local tariff of the Missouri Pacific Railway Company from Hannibal to Hepler was 46 cents per hundred. The joint tariff was divided between the two companies by giving to the Missouri Pacific Company 34 and to the Chicago, Burlington & Quincy Company 17 cents. The Hayward Grocer Company, a firm doing business at Hannibal, shipped sugars from that place to Hepler, upon which shipment the regular local rate of 46 cents was charged and collected. They also ordered a Chicago firm to ship sugar from Chicago to the same point. This shipment was made over the Chicago, Burlington & Quincy Railroad, and upon it the joint rate, 51 cents, was charged and paid. It was argued in the trial court that the Chicago, Burlington & Quincy Railroad Company made a contract to carry the sugars from Chicago to Hepler, and that, after carrying them over its own line from Chicago to Hannibal, it employed the Missouri Pacific Company to carry for it the balance of the way, and paid it 34 cents; or, to state it in another way, the Missouri Pacific Company charged the Chicago, Burlington & Quincy Company only 34 cents for carrying the sugars from Hannibal to Hepler, while it charged the Hayward Grocer Company, and others living in Hannibal, 46 cents for doing a like work; and it was held that this constituted a giving to one person an undue and unreasonable advantage, and subjected one to unjust and unreasonable disadvantage, within the denunciation of section 3 of the interstate commm-ce act. In other words, *919 a comparison was drawn between the local rate of the one company and the share which it received by agreement of the joint through rato of the two companies, and, the two being unequal, the agent was found guilty of violating the act.
The decision of the court of appeals of this circuit, just announced in the case of Railroad Co. v. Osborne, 52 Fed. Rep. 912, precludes the necessity of any extended discussion. It was there held that each company established its own tariff, and that the reasonableness of the tariff’ of one is not determined by that of any other. It was also held that two connecting companies, forming by agreement a joint through tariff’, create thereby, as it were, a line new and independent of that of either of the connecting companies; and hence that such joint tariff, or the share which either takes of such tariff', is not the basis by which the reasonableness of its local tariff is to be determined. It is true that in that case the question arose under section 4, with reference to long and short hauls, while in this it arises under section 3, prohibiting undue and unreasonable preferences or advantages; but still the questions there decided are controlling here. If the joint through tariff of two connecting roads is not a standard by which the local tariff’ of either can bo declared in violation of section 4, neither can it be a standard by which the question of undue preferences is determined under section 8. Because the local rate is in excess of the share of the joint rate, it docs not follow that an undue preference or advantage has been given. The trial court seemed to recognize this proposition, for it charged:
“Now, conceding that some difference between the local rato and the Missouri Pacific Railway Company's proportion of the through rate is permissible, owing to the different conditions affecting the two shipments, the question that 1 submit to you under the second and third counts is whether the difference shown in this case between the two rates of 13 cents per 100 pounds is, under all the oir cumstancesof the case, a reasonable difference, or an undue and unreasonable difference, not justified by the different circumstances under which through shipments from Chicago and local shipments from Hannibal are made. If you find that the difference in rate of 12 cents per 100 pounds is an undue and unreasonable difference, and, as before explained, that defendant, as agent of the Missouri Pacific Railway Company', knowingly and willfully gave the Chicago, Burlington & Quincy Railroad the advantage of such difference in the shipment of the two barrels of sugar mentioned in the indictment, then you may return a verdict of guilty' on the second and third counts, although you acquit on the first count. * * In determining the last question submitted to you as to the reasonableness or unreasonableness of the difference between the local rate and the Missouri Pacific Company’s proportion of the through rate, I give you full liberty to consider all the facts, circumstances, and reasons adduced by the various witnesses in justification of the difference shown, and I ask you to consider the same carefully and fairly, without any' prejudice or bias whatsoever.”
But, in order to constitute a crime, the act must he one which the party is able to know in advance whether it is criminal or not. The criminality of an act cannot depend upon whether a jury may think it reasonable or unreasonable. There must be some definiteness and certainty. In the case of Railway Co. v. Dey, 35 Fed. Rep. 866, 876, I had occasion to discuss this matter, and I quote therefrom as follows:
“Now, the contention of complainant is that the substance of these provisions is tiiat, if a railroad company charges an unreasonable rate, it shall bo deemed a criminal, and punished by fine, and that such a statute is loo indefinite and un *920 certain, no man being able to tell in advance what in fact is, or what any jury will find to be, a reasonable rate. If this were the construction to be placed upon this act as a whole, it would certainly be obnoxious to complainant’s criticism, for no penal law can be sustained unless its mandates are so clearly expressed ■that any ordinary person can determine in advance what he may and what lie may not do under it. In Dwar. St. 652, it is laid down ‘ that it is impossible to dissent from the doctrine of Lord Coke that the acts of parliament ought to be plainly and clearly, and not cunningly and darkly, penned, especially in legal matters.’ See, also, U. S. v. Sharp, Pet. C. C. 122; The Enterprise. 1 Paine, 84; Bish. St. Crimes, § 41; Lieb. Herm. 156. In this the author quotes the law of the Chinese Penal Code, which reads as follows: ‘ "Whoever is guilty of improper conduct, and of such as is contrary to the spirit of the laws, though not a breach of any specific part of it, shall be punished at least forty blows; and when the impropriety is of a serious nature, with eighty blows.’ There is very little difference between such a statute and one which would make it a criminal offense to charge more than a reasonable rate. See another illustration in E.r parte Jackson, 45 Ark. 15.8. ”
Applying that doctrine in this case, and eliminating the idea that the through rate is a standard of comparison of the local rate, there is nothing to justify a verdict of guilty against the defendant. ' Judgment will therefore be reversed, and the case remanded for further proceedings.