## DETROIT CREAMERY CO. et al. v. KINNANE et al.

(District Court, E. D. Michigan, S. D. April 23, 1920.)

No. 331.

1. **Constitutional law** ☞298(1)—**Statutes** ☞47—**War** ☞4—**Statute prohibiting unjust or unreasonable charges for necessaries does not provide due process, and is uncertain.**

Food Control Act Aug. 10, 1917, § 4 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛ff), as amended by Act Oct. 22, 1919, § 2, making it unlawful to make any unjust or unreasonable rate or charge in handling or dealing in necessaries, is too indefinite and uncertain to satisfy constitutional requirements, or constitute due process of law, in that no standard is furnished by which to determine the justness or reasonableness of charges, especially in view of Const. Amend. 6, providing that in all criminal prosecutions accused shall have the right to be informed of the nature and cause of the accusation.

2. **Injunction** ☞85(2)—**Enforcement of unconstitutional criminal statute, which will cause irreparable injury, may be enjoined.**

The United States district attorney may be enjoined from attempting to enforce an unconstitutional criminal statute prohibiting unjust or unreasonable charges for necessaries, where the threatened enforcement of such statute against plaintiffs will cause irreparable injury to their business of selling milk.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Injunction ⬅⇒11—Enforcement of criminal statute may be enjoined, without waiting until institution of prosecutions.**

> Where the threatened enforcement of an unconstitutional criminal statute against plaintiffs will cause them irreparable injury, they are not required to wait until criminal prosecutions are actually brought against them before suing for injunctive relief.

In Equity. Suit by the Detroit Creamery Company and others against John E. Kinnane and others, in which the Michigan Milk Producers' Association asked leave to intervene. On final hearing. Decree making temporary injunction permanent against the defendant named, and dismissing the bill as to the other defendants.

Stevenson, Carpenter, Butzel & Backus and D. B. Hayes, all of Detroit, Mich., for plaintiffs.

James Green, of Lansing, Mich., for intervener.

John E. Kinnane, U. S. Dist. Atty., of Bay City, Mich., for defendants.

TUTTLE, District Judge. The sole question involved in this case is whether the provision of section 4 of the Food Control Act, also known as the Lever Act, being the Act of Congress of August 10, 1917, c. 53, 40 Statutes at Large, 276 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛ff), as amended by section 2 of the Act of October 22, 1919 (41 Stat. 298), making it unlawful for any person, among other things, "to make any unjust or unreasonable rate or charge, in handling or dealing in or with any necessaries" is constitutional.

Plaintiffs filed their bill of complaint herein, alleging that they were engaged in the business of purchasing milk from producers thereof and preparing the same for the market and for resale distribution to the consumers thereof within the city of Detroit and adjacent territory; that the price of milk for the past several years in Detroit had been established between the producer and the distributor by the Detroit Milk Commission, "a body composed of men who, by reason of continuing investigation and contact with the conditions properly entering into a reasonable price for the retail and wholesale sale of milk, have become practical experts"; that under the price schedule fixed from time to time by said commission the rights of the said producers and distributors, on the one hand, and of the public, on the other, had been properly protected, and that the price of milk per quart for sale at retail to the public had been prescribed for the month of March, 1920, at 16 cents per quart, based on a certain price to the producers as set forth in the bill; that the defendants, other than John E. Kinnane (the latter being United States attorney for this district), claimed that they composed a body designated as a "Federal Fair Price Commission," appointed under authority of the so-called Lever Act hereinbefore mentioned, and as such had attempted to prescribe a schedule for the sale of milk at retail to commence April 15, 1920, at 14 cents per quart; that said defendants did not hold any legal office, and that their action in attempting to prescribe such rate

---

⬅⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

was void and of no effect; that the defendant Kinnane was the United States district attorney, as aforesaid, and as such had stated publicly that he would cause to be prosecuted any person failing to comply with the price schedule so prescribed by the so-called Fair Price Commission mentioned as a violation of the said Lever Act; that plaintiffs had in their employ upwards of 500 milk salesmen, selling their milk at retail to householders and consumers daily, and that the fines capable of being levied or claimed rightfully to be levied on one day's transactions against such salesmen would aggregate millions of dollars; that plaintiffs had in their retail milk business large numbers of vehicles of various kinds, representing many thousands of dollars; that by reason of the aforesaid threats of the defendants against plaintiffs said milk salesmen would not continue to deliver milk at lawful prices, and as a result of the claimed and usurped authority of the defendants, unless restrained, the business of the plaintiffs would be irreparably injured and destroyed; that in so far as said act undertook to make it unlawful for any person "to make any unjust or unreasonable rate or charge, in handling or dealing in or with any necessaries," it did not legally create any crime under the United States Constitution, particularly the Sixth Amendment thereto, for the reason that such alleged crime was expressed in such vague, indefinite, and uncertain manner, without any reasonably certain standard, as to be a violation of the rights of citizens of the United States, such as the plaintiffs; that the threatened criminal prosecution referred to would involve the plaintiffs in contractual difficulties and litigation over existing contracts for the supplying of milk to them, would result in the destruction of their established business, and would operate to deprive the plaintiffs of their property without due process of law, in violation of said Constitution, and that they were entitled to come into this court to enforce their federal rights thus threatened; that the defendants were claiming to act under color of the said Lever Act, but that, as such act is void, it affords them no justification, and renders them liable to be enjoined from inflicting upon plaintiffs the wrongs complained of, and that the plaintiffs had no adequate remedy at law, and this court had sole jurisdiction of the subject-matter of their grievance; that the said defendants other than the said Kinnane acted capriciously and without affording the plaintiffs any real opportunity to be heard, and without any proper examination or investigation into the facts, and that the price fixed by such so-called Federal Fair Price Commission was confiscatory and illegal.

Plaintiffs further challenged the constitutionality of said Lever Act on the grounds that it was vague, indefinite, and uncertain; that it fixed no immutable standard of guilt, but left such standard to the variance of the different courts and juries which might be called upon to enforce it; that it did not inform those accused of its violation of the nature of the accusation against them, nor as to what acts would constitute such violation; that it failed to define a crime, but in essence merely declared that any person who should commit any unjust or unreasonable act should be guilty of a felony; and that, if enforced, it would deprive citizens of the United States of

their property and liberty without due or any process of law. Plaintiffs prayed that the defendants be enjoined temporarily and permanently from attempting to enforce the schedule of rates complained of, from interfering with the free conduct of their business by commencement of criminal proceedings or otherwise, and from harassing or oppressing them in the premises. The bill concluded with a prayer for general relief.

An answer was filed by the district attorney, in which he alleged that he and the other defendants constituted a body designated as the Federal Fair Price Committee, having been legally so appointed by the Attorney General of the United States; that as district attorney he approved of the judgment of said committee in its aforesaid action; that he had not made any statement or reached any determination as to any method of procedure against the plaintiffs for selling milk at excessive prices, but that it was probable that prosecution would be based on the provisions of said Lever Act, providing punishment for monopolizing or attempting to monopolize the milk supply of the city of Detroit, or for conspiring to limit the facilities for supplying milk to said city, or to restrict said supply or the distribution thereof, in order to enhance the price thereof; that the arrangements under which the producers and distributors, including the plaintiffs, supplied milk to said city, deprived the latter, in an arbitrary and unreasonable manner, of its natural supply thereof, and restricted the free sale of milk to the people of said city; that the plaintiffs were making huge profits in handling and distributing milk in said city, and that a number of them had paid stock dividends and large cash dividends derived from the very large margin which they make per quart for distributing said milk; that the retail charge made by plaintiffs for delivering milk to consumers was excessive and unreasonable, and that a reduction in such price, if borne entirely by the distributors of milk, including the plaintiffs, would not unfairly reduce their profits or injure their business; that the said Lever Act, as amended, was not unconstitutional, as charged in the bill; that compliance with the prices fixed by the said Fair Price Committee would not involve the plaintiffs in litigation over existing contracts for supplying milk; that such prices were not confiscatory or unfair, and would not cause irreparable injury to plaintiffs; that such prices were not fixed capriciously, but after a full hearing to the milk producers and distributors; that no ground exists for an injunction against him as United States attorney, as his right to act in his official capacity in accordance with his judgment cannot properly be restrained by this court, but that any question arising under the law involved can be readily tested by proper action in proceedings brought for the enforcement thereof, and that the relief prayed should be denied, and the bill of complaint dismissed.

An intervening petition was filed by the Michigan Milk Producers' Association, alleging that it was composed principally of farmers and dairymen throughout the state of Michigan, who were engaged in the business of selling and delivering milk to the plaintiffs, and that such association was under contracts with the plaintiffs for the sale of such milk, all of which was produced by the members of said association

upon their farms, to be distributed and sold within said city of Detroit and vicinity. Petitioner alleged that by virtue of said contracts it claimed an interest in this suit, and that, as it would be vitally affected by the outcome of such suit, it prayed for permission to intervene as a codefendant therein, and to file a separate answer, in order to protect its interests. In such answer, as afterwards filed, said petitioner admitted the material allegations in the bill, and practically joined with the plaintiffs in seeking the same relief and on the same grounds prayed by them.

On the hearing of the application for temporary injunction, the defendants, including the district attorney, conceded that the Federal Fair Price Commission, also referred to as the Federal Fair Price Committee, mentioned in the pleadings, had no official standing or authority to fix rates or charges which were binding upon any one, but was limited in its functions to informal investigations into conditions surrounding the making of prices for the commodities mentioned in the Lever Act, and to advising, in an unofficial capacity, the district attorney in connection with such prices.

On such hearing this court granted such application as against the district attorney and issued such temporary injunction pending the final hearing on bill and answer, restraining said district attorney, "until the further order of the court, from enforcing or attempting to enforce any criminal proceedings against the plaintiffs, or any one of them, for violation of section 4 of the Lever Act on the charge of making an unjust or unreasonable rate or charge in handling or dealing in or with any necessaries." In view of the concession just mentioned in regard to the status of the other defendants, they were not made parties to said injunction.

The parties hereto have now filed a stipulation setting forth that—

"In view of the decision of the court in this cause on April 20, 1920, which granted a temporary restraining order or injunction against the United States Attorney for the Eastern district of Michigan, defendant herein, restraining him from prosecuting the complainants, or any of them, under a certain provision of section 4 of the Lever Act, so called, as amended, and holding and deciding that the provision of section 4 of the aforesaid act of Congress, as amended, in so far as it declares it to be unlawful to make any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries, or to exact excessive prices for necessaries, is unconstitutional and void, and said decision being controlling and decisive in the case, and based entirely upon the law, it is therefore considered unnecessary to take proofs in this cause for the reasons aforesaid, the aforesaid question of law being controlling and decisive. It is therefore stipulated and agreed as aforesaid that the case proceed to a final hearing without the taking of proofs, and that the taking of proofs herein be dispensed with."

[1] The only question, therefore, now involved, is whether the provision of section 4 of this Lever Act as amended, to the effect that "it is hereby made unlawful for any person * * * to make any unjust or unreasonable rate or charge, in handling or dealing in or with any necessaries," is constitutional.

The Sixth Amendment to the federal Constitution provides that—

"In all criminal prosecutions, the accused shall enjoy the right * * * to be informed of the nature and cause of the accusation."

264 F.—54

It seems clear that an indictment which, following the language of this statute, charged a person with merely having made an "unjust" or "unreasonable" rate or charge in handling or dealing in or with any necessaries, would be wholly insufficient to inform such person of the nature and cause of the accusation thus made.

Such an indictment, however, could not specify the offense thus charged with any more detail, for the reason that the statute purporting to create such offense does not state the facts, acts, or conduct necessary to constitute the crime denounced. What is an unjust rate or an unreasonable charge? In determining this question, what elements are to be taken into consideration? What is the test, or standard, or basis which is to be used in attempting to ascertain whether this statute has been violated? The statute itself furnishes no assistance in the way of answering this question. Is the reasonableness or justice of a rate to be determined by the amount of profit derived therefrom? If so, what percentage of profit from the business of selling a certain article makes the rate or charge in handling or dealing in that article unreasonable, and therefore unlawful and criminal? If such profit is derived from a business devoted to the sale of several kinds of articles, how is the portion of such profit properly chargeable to each of such articles to be determined, so that the person engaging in such business may know whether or not he is a criminal? What elements enter into the question whether any particular charge is just or unjust, reasonable or unreasonable? What relation to the reasonableness of a rate have the cost of labor, the cost of machinery and of raw material, the cost of overhead charges, and the other expenses of production? How is the amount properly chargeable to these expenses to be fixed and ascertained? To what extent are differences in market conditions in different places to be considered? Is the existence or absence of competition to be taken into account? Is any allowance to be made for losses and misfortunes which affect costs and profits? To whom must a rate or charge be unjust, to be "unjust" within the meaning of this statute? Is it the effect which a rate or charge has upon the seller, or which it has on the purchaser, which renders it reasonable or unreasonable?

These and other questions which readily suggest themselves naturally and perhaps necessarily enter into a consideration of the nature of the proper test or standard by which the criminality of any act under this statute must be determined. To the statute itself we look in vain for answers to any of such questions. It furnishes no means for the guidance of courts, juries, or defendants in determining when or how the statute has been violated. No standard or test of guilt has been fixed. We are left to the uncontrolled and necessarily conjectural judgment, or rather conclusion, of each particular jury, or perhaps court, before which the accused in any given case may be on trial for his liberty. Making, as it does, the question of guilt dependent upon this mere conclusion or opinion of the court or jury as to whether the rate or charge involved be just or unjust, reasonable or unreasonable, I cannot avoid the conclusion that this statute is too vague, indefinite, and uncertain to satisfy constitutional requirements

or to constitute due process of law. United States v. Brewer, 139 U. S. 278, 11 Sup. Ct. 538, 35 L. Ed. 190; Louisville & Nashville R. Co. v. Railroad Commission of Tennessee (C. C.) 19 Fed. 679; Tozer v. United States (C. C.) 52 Fed. 917; Hocking Valley Ry. Co. v. United States, 210 Fed. 735, 127 C. C. A. 285; United States v. L. Cohen Grocer Co., 264 Fed. 218 (recent unreported decision of the United States District Court for Eastern District of Missouri); United States v. Capital Traction Co., 34 App. D. C. 592, 19 Ann. Cas. 68; Louisville & Nashville R. R. Co. v. Commonwealth, 99 Ky. 132, 35 S. W. 129, 33 L. R. A. 209, 59 Am. St. Rep. 457.

It is, of course, extremely unfortunate that in enacting this statute Congress should have neglected to observe the constitutional guaranties applicable; but this court cannot amend the statute, either by judicial construction or otherwise, but can only interpret and apply it in accordance with rules of law. Any argument based upon what may be thought to be the practical effect of proper judicial construction must be addressed to the only tribunal which made or can make this statute, or any other statute deemed by it necessary to carry out the purposes for which it passed this unconstitutional law.

[2] There can be no doubt of the power of this court to enjoin the defendant, although occupying the official position which he does, from attempting to enforce an unconstitutional criminal statute against the plaintiffs, in excess of his lawful authority, and to their threatened and resultant irreparable injury, as alleged in the bill of complaint herein. Philadelphia Co. v. Stimson, 223 U. S. 605, 32 Sup. Ct. 340, 56 L. Ed. 570; William Cramp & Sons Ship & Engine Building Co. v. International Curtis Marine Turbine Co., 246 U. S. 28, 38 Sup. Ct. 271, 62 L. Ed. 560.

The commencement of various criminal prosecutions, based upon alleged violation of the statutory provision here involved, clearly indicates the intention of the defendant district attorney to attempt the enforcement of this particular provision of the statute, and shows beyond doubt the propriety and necessity of the injunction sought.

[3] Plaintiffs, however, are not required to wait until criminal prosecutions are actually brought against them before invoking the equitable relief to which they are entitled under the circumstances. Vicksburg Waterworks Co. v. Vicksburg, 185 U. S. 65, 22 Sup. Ct. 585, 46 L. Ed. 808; Waite v. Macy, 246 U. S. 606, 38 Sup. Ct. 395, 62 L. Ed. 892.

In view of some of the allegations in the answer, it may not be amiss to make it entirely plain, if it is not already, that the only portion of this statute involved, construed, or considered here is the provision therein prohibiting the making of an "unjust or unreasonable rate or charge in handling or dealing in or with necessaries." No opinion is expressed concerning the meaning, scope, or effect of any other portions of such statute.

A decree will be entered, making the temporary injunction permanent against the defendant Kinnane, and dismissing the bill as to the other defendants.