## UNITED STATES v. ROSENBLUM.

(District Court, W. D. Pennsylvania. May 1, 1920.)

No. 42.

1. **War ⊜⊃4—Act regulating price of necessaries is within power of Congress.**

    Act Oct. 22, 1919, § 2, amending Act Aug. 10, 1917, § 4, and prohibiting unjust or unreasonable rates or charges for necessaries and prescribing the punishment for violations, is within the constitutional powers of Congress to enact war measures.

2. **Criminal law ⊜⊃13—Statute prohibiting unreasonable charges for necessaries held not void for uncertainty.**

    Act Oct. 22, 1919, § 2, amending Act Aug. 10, 1917, § 4, and prohibiting unjust or unreasonable charges for necessaries, is not void for uncertainty, under Const. Amend. 6, requiring that in all criminal prosecutions accused shall be informed of the nature and cause of the accusation.

Criminal prosecution by the United States against Nathan Rosenblum. On demurrer and motion to quash the indictment. Demurrer overruled, and motion denied.

E. Lowry Humes, of Pittsburgh, Pa., for the United States.

James P. Whitla, of Sharon, Pa., and William T. Tredway, of Pittsburgh, Pa., for defendant.

THOMSON, District Judge. This is a demurrer and motion to quash the indictment. The indictment is drawn under section 2 of the Act of Congress of October 22, 1919, c. 80, 41 Stat. 297, amending section 4 of the Act of August 10, 1917, c. 53, 40 Stat. 276, known as the Lever Act. The relevant part of the statute defining the offense charged is as follows:

"That it is hereby made unlawful for any person willfully * * * to make any unjust or unreasonable rate or charge in handling or dealing in or with necessaries. * * * Any person violating any of the provisions of this section upon conviction thereof shall be fined not exceeding $5,000 or be imprisoned for not more than two years, or both."

The first count of the indictment, following the language of the statute, charges that the defendant—

"did then and there unlawfully, knowingly, willfully, and feloniously make an unjust and unreasonable rate and charge in handling and dealing in a certain necessary as defined by the Act of Congress of the United States of October 22, 1919, amending the Act of August 10, 1917, to wit, sugar, in this: That the said Nathan Rosenblum did then and there sell to M. A. Grande sixty (60) pounds of granulated sugar at twelve and a half cents (12½c) per pound, contrary to the form of the act of Congress in such case made and provided, against the peace and dignity of the United States of America."

The second and third counts are precisely the same in form, differing only in the date of sale and the party to whom the sale was made.

The grounds of attack on the indictment are that the act of Congress is unconstitutional, because too vague, indefinite, and uncertain to be enforced by the courts, and by reason thereof does in effect delegate the legislative power vested in Congress alone to the courts

⊜⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and juries of the country; that the act by its terms fixes no definite or certain rule by which human conduct can be uniformly governed, so as to know whether the dealer is acting within the law or violating it; that the act does not inform the accused of the nature and cause of the accusation against him, nor provide a method of so informing him, as required by the Sixth Amendment of the Constitution; that the indictment fails to set forth the cost price of the sugar sold, or the replacement prices thereof, at the time of the various sales, so that neither the court nor the jury can judge whether the sale was an unjust and unreasonable sale or charge; and, lastly, that the indictment as found varies very materially from the information on which the defendant gave bail for court.

[1, 2] In the light of various decisions of the Supreme Court, the power of Congress to lawfully enact such legislation, acting within its constitutional powers, is not now to be questioned. While neither war, nor any other great exigency of government, suspends for a moment any provision of the Constitution, yet the government, within the provisions of that instrument, has all the powers granted to it which are necessary to preserve the life of the nation. It is under these powers that the numerous acts of Congress, known as war measures, find their support. The attack on the indictment, and on the particular section of the act of Congress under which it is drawn, is supported by much reason and by numerous and high authorities. The Sixth Amendment to the Constitution requires that in all criminal prosecutions the accused shall be informed of the nature and cause of the accusation. A condensed statement of this important and fundamental right is found in the case of United States v. Brewer, 139 U. S. 288, 11 Sup. Ct. 541, 35 L. Ed. 190, wherein the court says:

"Laws which create crime ought to be so explicit that all men subject to their penalties may know what acts it is their duty to avoid."

And again:

"Before a man can be punished, his case must be plainly and unmistakably within the statute."

This general rule is incontrovertible, and upon it rest most of the opinions holding this and like statutes void for uncertainty. But the rule, while simple and plain enough in itself, is often most difficult of application. Recognizing the high necessity of the rule for the protection of the liberty of the citizen, and also recognizing the full force of the reasoning which seeks to apply the rule to section 4 of the Lever Act under which this indictment is drawn, I am led to an opposite conclusion by the reasoning of the Supreme Court in certain well-considered cases. In Waters-Pierce Oil Co. v. Texas, 212 U. S. 87, 29 Sup. Ct. 220, 53 L. Ed. 417, the Supreme Court sustained the Anti-Trust Acts of Texas, which denounced contracts and arrangements "reasonably calculated" to fix and regulate the price of commodities, and prohibiting acts which "tend" to accomplish the prohibited results; this against the objection that the act was so vague, indefinite, and uncertain as to render it unconstitutional, the

defendant not being informed of the nature and character of the acts constituting a violation of the law.

In Standard Oil v. United States, 221 U. S. 1, 63, 31 Sup. Ct. 502, 55 L. Ed. 619, 34 L. R. A. (N. S.) 834, Ann. Cas. 1912D, 734, sections 1 and 2 of the Sherman Anti-Trust Act (Comp. St. §§ 8820, 8821) were under consideration. The first section declared as illegal and punishable by fine and imprisonment, every contract, combination in the form of trust or otherwise, "in restraint of trade or commerce" among the several states, and the second section makes it a misdemeanor for any one to "monopolize or attempt to monopolize" any part of the trade or commerce among the several states. It was urged that the language of the statute embraces every contract, combination, etc., in restraint of trade, and leaves no room for the exercise of judgment, simply imposing the duty of applying its prohibitions to every case within its literal language. But the court held that—

"Because, as the acts which may come under the classes stated in the first section and the restraint of trade to which that section applies are not specifically enumerated or defined, it is obvious that judgment must in every case be called into play in order to determine whether a particular act is embraced within the statutory classes, and whether, if the act is within such classes, its nature or effect causes it to be a restraint of trade within the intendment of the act."

The court further said:

"The merely generic enumeration which the statute makes of the acts to which it refers, and the absence of any definition of restraint of trade as used in the statute, leaves room for but one conclusion, which is that it was expressly designed not to unduly limit the application of the act by precise definition, but while clearly fixing a standard, that is, by defining the ulterior boundaries which could not be transgressed with impunity, to leave it to be determined by the light of reason, guided by the principles of law and the duty to apply and enforce the public policy embodied in the statute, in every given case whether any particular act or contract was within the contemplation of the statute."

More pertinent still is the reasoning of the Supreme Court in Nash v. United States, 229 U. S. 373, 33 Sup. Ct. 780, 57 L. Ed. 1232, as that was a criminal prosecution under the provisions of the Sherman Act. The language of the court there is so persuasive, if not controlling, in the present case, that I feel justified in quoting at some length from the opinion (229 U. S. at page 376, 33 Sup. Ct. at page 781, 57 L. Ed. 1232):

"The objection to the criminal operation of the statute is thought to be warranted by Standard Oil Co. v. United States, 221 U. S. 1, and United States v. American Tobacco Co., 221 U. S. 106. Those cases may be taken to have established that only such contracts and combinations are within the act as, by reason of intent or the inherent nature of the contemplated acts, prejudice the public interests by unduly restricting competition or unduly obstructing the course of trade. 221 U. S. 179. And thereupon it is said that the crime thus defined by the statute contains in its definition an element of degree as to which estimates may differ, with the result that a man might find himself in prison because his honest judgment did not anticipate that of a jury of less competent men. The kindred proposition, that 'the criminality of an act cannot depend upon whether a jury may think it reasonable or unreasonable. There must be some definiteness and certainty'—is cited from the late Mr.

Justice Brewer, sitting in the Circuit Court. Tozer v. United States, 52 Fed. 917, 919.

"But apart from the common law as to restraint of trade thus taken up by the statute the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree. If his judgment is wrong, not only may he incur a fine or a short imprisonment, as here; he may incur the penalty of death. 'An act causing death may be murder, manslaughter, or misadventure according to the degree of danger attending it' by common experience in the circumstances known to the actor. 'The very meaning of the fiction of implied malice in such cases at common law was that a man might have to answer with his life for consequences which he neither intended nor foresaw.' Commonwealth v. Pierce, 138 Mass. 165, 178. Commonwealth v. Chance, 174 Mass. 245, 252. 'The criterion in such cases is to examine whether common social duty would, under the circumstances, have suggested a more circumspect conduct.' 1 East, P. C. 262. If a man should kill another by driving an automobile furiously into a crowd, he might be convicted of murder however little he expected the result. See Reg. v. Desmond, and other illustrations in Stephen, Dig. Crim. Law, art. 223 (1st ed.) p. 146. If he did no more than drive negligently through a street he might get off with manslaughter or less. Reg. v. Swindall, 2 C. & K. 230; Rex v. Burton, 1 Strange, 481. And in the last case he might be held, although he himself thought that he was acting as a prudent man should. See The Germanic, 196 U. S. 589, 596. But, without further argument, the case is very nearly disposed of by Waters-Pierce Oil Co. v. Texas (No. 1), 212 U. S. 86, 109, where Mr. Justice Brewer's decision and other similar ones were cited in vain. We are of opinion that there is no constitutional difficulty in the way of enforcing the criminal part of the act."

In International Harvester Co. v. Kentucky, 234 U. S. 216, 34 Sup. Ct. 853, 58 L. Ed. 1284, the provisions of certain acts of Kentucky were held unconstitutional under the Fourteenth Amendment, as offering no standard of conduct that it is possible to know in advance and comply with. In substance, that it compelled a man to guess what the fair market value of commodities manufactured or sold by him would be under other than existing conditions, and was thus beyond constitutional limits. That case, however, was distinguished from the Nash Case in this language:

"We regard this decision as consistent with Nash v. United States, 229 U. S. 373, 377, in which it was held that a criminal law is not unconstitutional merely because it throws upon men the risk of rightly estimating a matter of degree—what is an undue restraint of trade. That deals with the actual, not with an imaginary condition other than the facts. It goes no further than to recognize that, as with negligence, between the two extremes of the obviously illegal and the plainly lawful there is a gradual approach, and that the complexity of life makes it impossible to draw a line in advance without an artificial simplification that would be unjust. The conditions are as permanent as anything human, and a great body of precedents on the civil side coupled with familiar practice make it comparatively easy for common sense to keep to what is safe."

The cases on both sides of this interesting and difficult question are collected and considered in an able opinion by District Judge Rudkin, for the Eastern District of Washington. The case arose on demurrer to an indictment under the act of Congress. In sustaining the indictment, the learned judge quotes the opinion of the Circuit Court of Appeals of the Seventh Circuit, in the case of Sears, Roebuck & Co. v. Federal Trade Commission, 258 Fed. 307, 169 C. C. A. 323. The court was there considering the authority given the Federal

Trade Commission over "unfair methods of competition." There being no definition of these words in the act, it was strongly urged that they were void for indefiniteness. In sustaining the act, the court pointed out that if the expression "unfair methods of competition" was too vague for use, innumerable statutes would fall under the same condemnation; such, for instance, as those which predicate rights and prohibitions upon "unsound mind," "undue influence," "unfair use," "unfit for cultivation," "unreasonable rate," "unjust discrimination," "rebates or concessions," "schemes to defraud," and the like.

In view of the reasoning of the foregoing opinions which are authoritative, I am not convinced that the section of the Lever Act in question, which makes it unlawful for any person "wilfully to make any unjust or unreasonable rate or charge in handling or dealing in necessaries," is void for uncertainty. Obviously, it would be impossible for Congress to fix any definite standard, any fixed rate, as the measure for determining an unjust or unreasonable rate or charge. This because profits must always depend upon a number of varying elements, including time, place, and circumstance. A fixed standard in practical operation would necessarily prove unjust and unreasonable in the extreme. The words used by Congress were of common use and of well-known meaning. The merchant in passing upon the question of what is an unjust and unreasonable rate or charge deals with the actual, not with an imaginary condition other than the facts. Since, as the Supreme Court has said, "between the two extremes of the obviously illegal and the plainly lawful there is a gradual approach and that the complexity of life makes it impossible to draw a line in advance without an artificial simplification that would be unjust," the only alternative, if profiteering is to be lawfully condemned, was to place the responsibility upon the dealer. If in doubt, he should keep on the safe side. If for greater gain he takes the risk of violating the statute, he cannot complain if the jury denounces his act as unlawful.

The demurrer is overruled, the motion to quash refused, and the defendant is directed to plead to the indictment.