### LAMBORN et al. v. McAVOY, U. S. Atty., et al.

(District Court, E. D. Pennsylvania. June 9, 1920.)

No. 2043.

1. **Injunction** ☞105(2)—**Enforcement of void criminal statute which destroys property restrained.**

Equity can interfere by injunction to prevent criminal proceedings under a void law which would destroy property rights.

2. **Criminal law** ☞13—**Statute concerning common-law offense not void, because jury must determine degree.**

A statute relating to an offense known at the common law is not void for uncertainty, because under it the matter of degree is left to the determination of the jury.

3. **Criminal law** ☞13—**Act preventing unreasonable charges for necessaries is unconstitutional.**

Act Aug. 10, 1917, § 4, as amended by Act Oct. 22, 1919, § 2, punishing unreasonable charges for necessaries which relates to no offense known at the common law, and prescribes no test for determining the unreasonableness of the charge, but leaves that matter entirely to the jury, does not inform the accused of the nature of the accusation of the act against him, as required by Const. Amend. 6, and is invalid.

In Equity. Suit by Arthur H. Lamborn and others against Charles D. McAvoy, United States Attorney, and others, to restrain enforcement of Food Control Act. On motion for preliminary injunction. Injunction granted.

Wm. A. Glasgow, Jr., and Henry P. Brown, both of Philadelphia, Pa., Louis O. Van Doren and Wm. R. Conklin, both of New York City, for plaintiffs.

Charles D. McAvoy, U. S. Atty., and T. Henry Walnut, Asst. U. S. Atty., both of Philadelphia, Pa., for defendants.

THOMPSON, District Judge. This is a suit in equity, brought to enjoin the United States attorney and other officials of the United States from instituting and prosecuting criminal proceedings against the plaintiffs for alleged violations of section 4 of the act of August 10, 1917, as amended by the act of October 22, 1919 (41 Stat. 298, c. 80, § 2), which makes it a criminal offense to "make any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries."

The plaintiffs, who are engaged in handling, importing, selling, and distributing raw and refined sugars, aver that they are threatened

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

with criminal prosecution upon the charge stated, in that they sold a large quantity of sugar at a price which it is charged is unjust and unreasonable, and that they are threatened in case of prosecution with such action upon the part of the Department of Justice as would interfere with and ruin their business; that the language of the statute by reason of being vague, indefinite, and uncertain cannot be enforced by the courts without depriving the plaintiffs of their liberty and property without due process of law in violation of the Fifth Amendment to the Constitution; and that it does not inform the accused of the nature of the accusation against him and is therefore in violation of the Sixth Amendment to the Constitution.

If the language of the statute renders it unconstitutional upon the grounds stated, it is unnecessary to consider the other grounds of unconstitutionality set up in the bill and urged at the hearing.

[1] The facts appearing from the pleadings and affidavits are, in my opinion, sufficient to sustain equitable jurisdiction under the rule stated by Mr. Justice Day in Dobbins v. Los Angeles, 195 U. S. 223, 25 Sup. Ct. 18, 49 L. Ed. 169:

"It is well settled that where property rights will be destroyed unlawful interference by criminal proceedings under a void law or ordinance may be reached and controlled by a decree of a court of equity. Davis & Farnum Mfg. Co. v. Los Angeles, 189 U. S. 207, 218, and cases therein cited."

See, also, Ex parte Young, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; Philadelphia Co. v. Stimson, Secretary of War, 223 U. S. 605, 32 Sup. Ct. 340, 56 L. Ed. 570.

The provisions of section 4 of the Lever Act in controversy have been the subject of a number of recent conflicting decisions. It is impracticable to analyze and discuss these rulings at length. The constitutionality of the act has been sustained, inter alia, by Judge Thomson, in the Western District of Pennsylvania, in United States v. Rosenblum, 264 Fed. 578; by the Circuit Court of Appeals for the Second Circuit, affirming Judge Hazel, of the Western District of New York, in the case of Weed v. Lockwood, 264 Fed. 453; by Judge Rudkin, of the District Court of Washington, in the case of United States v. Spokane Dry Goods Co., 264 Fed. 209; by Judge Holmes, of the Southern District of Mississippi, in a charge to the grand jury. It has been held unconstitutional, inter alia, by Judge Faris, of the Eastern District of Missouri, in the case of United States v. Cohen Grocer Co., 264 Fed. 218; by Judge Tuttle, of the Eastern District of Michigan, in the case of Detroit Creamery Co. v. Kinnane, 264 Fed. 845; and by Judge Evans, of the Western District of Kentucky, in a charge to the grand jury.

It must be generally recognized that, if the rule laid down by Mr. Justice Brewer, sitting in the Circuit Court in the case of Tozer v. United States, 52 Fed. 917, is the law, the statutory language in question is too vague, indefinite, and uncertain to charge a crime. The cases have all turned upon the question whether the rule in that case is recognized and followed, or has been overruled. Mr. Justice Brew-

er's language in that case, citing Railway Co. v. Dey, 35 Fed. 866, 1 L. R. A. 744, is as follows:

"In order to constitute a crime, the act must be one which the party is able to know in advance whether it is criminal or not. The criminality of an act cannot depend upon whether a jury may think it reasonable or unreasonable. There must be some definiteness and certainty. In the case of Railway Co. v. Dey, 35 Fed. 866, 876, I had occasion to discuss this matter, and I quote therefrom as follows: 'Now, the contention of complainant is that the substance of these provisions is that, if a railroad company charges an unreasonable rate, it shall be deemed a criminal, and punished by fine, and that such a statute is too indefinite and uncertain, no man being able to tell in advance what in fact is, or what any jury will find to be, a reasonable rate. If this were the construction to be placed upon this act as a whole, it would certainly be obnoxious to complainant's criticism, for no penal law can be sustained unless its mandates are so clearly expressed that any ordinary person can determine in advance what he may and what he may not do under it. In Dwar. St. 652, it is laid down "that it is impossible to dissent from the doctrine of Lord Coke that the acts of Parliament ought to be plainly and clearly, and not cunningly and darkly, penned, especially in legal matters." See, also, U. S. v. Sharp, Pet. C. C. 122; The Enterprise, 1 Paine, 34; Bish. St. Crimes, § 41; Lieb. Herm. 156. In this the author quotes the law of the Chinese Penal Code, which reads as follows: "Whoever is guilty of improper conduct, and of such as is contrary to the spirit of the laws, though not a breach of any specific part of it, shall be punished at least forty blows; and when the impropriety is of a serious nature, with eighty blows." There is very little difference between such a statute and one which would make it a criminal offense to charge more than a reasonable rate. See another illustration in Ex parte Jackson, 45 Ark. 158.' Applying that doctrine in this case, and eliminating the idea that the through rate is a standard of comparison of the local rate, there is nothing to justify a verdict of guilty against the defendant."

In Waters-Pierce Oil Co. v. Texas, 212 U. S. 86, 29 Sup. Ct. 220, 53 L. Ed. 417, the case was cited and the rule recognized in the opinion of the court by Mr. Justice Day. In that case proceedings were begun in the state court against the Waters-Pierce Oil Company to oust the company from doing business in the state of Texas and to assess penalties against it for violation of the anti-trust laws of that state. Mr. Justice Day in his opinion said:

"It is further insisted that the acts in question are so vague, indefinite, and uncertain as to deprive them of their constitutionality, in that they punish by forfeiture of the right to do business, and the imposition of penalties, under provisions of an act which do not advise a citizen or corporation, prosecuted under them, of the nature and character of the acts constituting a violation of the law. These objections are found in the words of the act of 1899, denouncing contracts and arrangements 'reasonably calculated' to fix and regulate the price of commodities, etc. And in the act of 1903 acts are prohibited which 'tend' to accomplish the prohibited results. It is insisted that these laws are so indefinite that no one can tell what acts are embraced within their provisions. In support of this contention it is argued that laws of this nature ought to be so explicit that all persons subject to their penalties may know what they can do, and what it is their duty to avoid. And reference is made to decisions which have held that a criminal statute should be so definite as to enable those included in its terms to know in advance whether the act is criminal or not. Among others, Tozer v. United States, 52 Fed. 917, is cited, in which the opinion was by Mr. Justice Brewer, then judge of the Circuit Court, in which it was held that the criminality of an act cannot depend upon whether a jury may think it reasonable or unreasonable. To the same effect is Railway Co. v. Dey, 35 Fed. 866, also decided by Judge Brewer at circuit. And also the case of Louisville & Nashville Railway v. Commonwealth, 99 Ky.

132, is relied upon, in which a railroad was indicted for charging more than a just and reasonable rate, in which it was held that the law was unconstitutional, for under such an act it rests with the jury to say whether a rate is reasonable, and makes guilt depend, not upon standards fixed by law, but upon what a jury might think as to the reasonableness of the rate in controversy. But the Texas statutes in question do not give the broad power to a court or jury to determine the criminal character of the act in accordance with their belief as to whether it is reasonable or unreasonable, as do the statutes condemned in the cases cited."

The rule of Tozer v. United States was therefore expressly recognized. Judge Manton, in his opinion for the Circuit Court of Appeals in the recent case of Weed & Co. v. Lockwood, 266 Fed. ——, says:

"The so-called rule of reason, as announced in Standard Oil Co. v. U. S., 221 U. S. 1, and United States v. American Tobacco Co., 221 U. S. 106, has changed the rule as laid down in the Tozer Case."

The rule of reason as established by the decisions in the Standard Oil and American Tobacco Co. Cases is stated in Nash v. United States, 229 U. S. 376, 33 Sup. Ct. 781, 57 L. Ed. 1232, as follows:

"The objection to the criminal operation of the statute is thought to be warranted by Standard Oil Co. v. United States, 221 U. S. 1, and United States v. American Tobacco Co., 221 U. S. 106. Those cases may be taken to have established that only such contracts and combinations are within the act as, by reason of intent or the inherent nature of the contemplated acts, prejudice the public interests by unduly restricting competition or unduly obstructing the course of trade. 221 U. S. 179."

It is vigorously contended that the Nash Case flatly overruled the Tozer Case. Following the language of Mr. Justice Holmes, above cited in the Nash Case, he proceeds as follows:

"And thereupon it is said that the crime thus defined by the statute contains in its definition an element of degree as to which estimates may differ, with the result that a man might find himself in prison because his honest judgment did not anticipate that of a jury of less competent men. The kindred proposition that 'the criminality of an act cannot depend upon whether a jury may think it reasonable or unreasonable. There must be some definiteness and certainty'—is cited from the late Mr. Justice Brewer, sitting in the Circuit Court. Tozer v. United States, 52 Fed. 917, 919. But, apart from the common law as to restraint of trade thus taken up by the statute, the law is full of instances where a man's fate depends on his estimating rightly—that is, as the jury subsequently estimates it—some matter of degree. If his judgment is wrong, not only may he incur a fine or a short imprisonment, as here; he may incur the penalty of death. 'An act causing death may be murder, manslaughter, or misadventure, according to the degree of danger attending it,' by common experience in the circumstances known to the actor. The very meaning of the fiction of implied malice in such cases at common law was that a man might have to answer with his life for consequences which he neither intended nor foresaw.' Commonwealth v. Pierce, 138 Mass. 165, 178; Commonwealth v. Chance, 174 Mass. 245, 252. 'The criterion in such cases is to examine whether common social duty would, under the circumstances, have suggested a more circumspect conduct.' 1 East P. C. 262. If a man should kill another by driving an automobile furiously into a crowd, he might be convicted of murder, however little he expected the result. See Reg. v. Desmond, and other illustrations in Stephen, Dig. Crim. Law, art. 223 (1st Ed.) p. 146. If he did no more than drive negligently through a street, he might get off with manslaughter or less. Reg. v. Swindall, 2 C. & K. 230; Rex v. Burton, 1 Strange, 481. And in the last case he might be held, although he himself thought that he was acting as a prudent man should. See

The Germanic, 196 U. S. 589, 596. But, without further argument, the case is very nearly disposed of by Waters-Pierce Oil Co. v. Texas (No. 1) 212 U. S. 86, 109, where Mr. Justice Brewer's decision and other similar ones were cited in vain. We are of opinion that there is no constitutional difficulty in the way of enforcing the criminal part of the act."

[2] I do not construe the language of Mr. Justice Holmes to mean that a crime may be predicated alone upon the reasonableness or unreasonableness of a man's conduct as found by a jury, but that, where a criminal statute deals with an offense known to the common law, such as monopoly, restraint of trade, and kindred offenses, or, for example, those based upon common-law offenses based upon causing the death of another, or, broadly speaking, any common-law offense taken up by a statute, then, where questions of degree must be determined to establish criminality, the fact that they must necessarily be determined by a jury does not render the statute unconstitutional and void.

[3] The present statute, however, leaves it open to the jury to determine whether it is unreasonable or unjust to make the rate or charge for necessaries, depending upon any number of undefined circumstances which may enter into the transaction. It leaves it uncertain, for instance, whether a man may lawfully base the price of his commodity upon a profit over the original price he paid for the identical article sold, whether he may lawfully make a price based upon general market conditions, whether he may make a profit based upon the average cost of a number of similar purchases, whether his selling price may be based upon the cost he would have to incur to replace the merchandise, and in general the jury may speculate as to any line of conduct, whether it would or would not justify a rate or charge, in determining whether it was unjust or unreasonable.

While in the Standard Oil Case, 221 U. S. 1, 31 Sup. Ct. 502, 55 L. Ed. 619, 34 L. R. A. (N. S.) 834, Ann. Cas. 1912D, 734, and the American Tobacco Co. Case, 221 U. S. 106, 31 Sup. Ct. 632, 55 L. Ed. 663, the rule of reason was applied to limit the application of the Sherman Act (Comp. St. § 8820 et seq.), as follows:

"Thus not specifying, but indubitably contemplating and requiring, a standard, it follows that it was intended that the standard of reason, which had been applied at the common law and in this country in dealing with subjects of the character embraced by the statute, was intended to be the measure used for the purpose of determining whether in a given case a particular act had or had not brought about the wrong against which the statute provided"

—in the statute now under consideration there is no standard of reason upon which a jury could find the conduct of the accused to be unreasonable or unjust which had been applied at the common law and in this country, but the entire question of the guilt or innocence of the accused is to be determined upon the opinion of a jury whether the conduct of the accused has been unjust or unreasonable.

In the case of Miller v. Strahl, 239 U. S. 426, 36 Sup. Ct. 147, 60 L. Ed. 364, Miller, the defendant below, had been held liable in damages for failure to observe the provisions of a state statute prescribing the duties of hotel keepers in regard to taking precautions against

fire and to giving notice to guests in case of fire. The law was upheld as a police statute; the court holding that it was not lacking in due process of law, because it did not prescribe fixed rules of conduct. The relations between hotel keepers and guests have been the subject of police regulations from the earliest times, and what the Supreme Court held was that, when a police statute required a landlord to do "all in his power" to save the guests and inmates in case of fire, the question whether or not he fulfilled that requirement was one to be determined by all the circumstances of the case at the time. The court said:

"It is manifest that rules could not be prescribed to meet these varying qualities. Yet all must be brought to judgment. And what better test could be devised than the doing of 'all in one's power' as determined by the circumstances?"

The case was held to fall under the rule in the Nash Case, and not under the case of International Harvester Co. v. Missouri, 234 U. S. 199, 34 Sup. Ct. 859, 58 L. Ed. 1276, 52 L. R. A. (N. S.) 525. The court said in its opinion that the acts of omission charged were plain violations of duty required by the statute. The statute placed specific duties upon the proprietor, and, the standard of duty being laid down, the act was held not unconstitutional and void for uncertainty.

In the case of International Harvester Co. v. Kentucky, 234 U. S. 216, 34 Sup. Ct. 853, 58 L. Ed. 1284, the Kentucky statute was held unconstitutional because there was no standard or measure by which it was possible for a citizen of the state to determine in advance of sale what would have been the real value of tobacco, if no combination of tobacco raisers had existed. The court said:

"The reason is not the general uncertainties of a jury trial, but that the elements necessary to determine the imaginary ideal are uncertain both in nature and degree of effect to the acutest commercial mind."

The conclusion that the Tozer Case was overruled by the Nash Case is based upon the inference that Mr. Justice Holmes cited the instances in which a man's fate may be determined upon his estimating rightly a matter of degree which a jury may subsequently estimate, as instances apart from the common law; but as I read the language he was not considering instances apart from the common law, but "apart from the common law as to restraint of trade," because the instances which he did describe were instances in the common law, where conduct was governed by legal standards, and the matter with which he dealt was the familiar one that in such cases there must be questions of degree in practical administration of justice, which juries ought to decide. The instances he cited were not instances apart from the common law, but were applications of the common law.

I think the deductions sought to be drawn from his language are not justified, and that a rule which would practically destroy the safeguards thrown about the accused by the Sixth Amendment, guaranteeing him information as to the nature of the offense with which he is charged, and which is to be proved against him, ought not to be drawn from mere inference.

The Nash Case, and all the subsequent decisions of the Supreme Court upholding statutes charged to be unconstitutional for reasons of uncertainty and vagueness, can be sustained, without assuming that the Tozer Case has been overruled. In my opinion it is still in force and effect, and, having been recognized by the Supreme Court as a rule laid down by one of its ablest justices sitting in the circuit, the general consequences would be too serious to justify its being thrust aside to meet the exigencies of the present conditions, when men are tempted to yield to the inclinations of their greed and avarice to take advantage of the public necessity. Whether Congress could or could not have fixed a standard need not be discussed. It has fixed standards in other provisions of the act under its war power, which are being applied. It is the duty of the courts without prejudice, however, to uphold the safeguards of the Constitution, the breaking down of which would inevitably lead to more serious results than those which are sought to be remedied through the vague, uncertain, and indefinite phrasing of the language in question in this case.

The preliminary injunction will be granted.